People v Liz L. (2023 NY Slip Op 06008)

People v Liz L.

2023 NY Slip Op 06008

Decided on November 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 22, 2023

113662
[*1]The People of the State of New York, Respondent,
v
Liz L., Appellant.

Calendar Date:November 13, 2023

Before:Lynch, J.P., Clark, Ceresia, Fisher and Mackey, JJ.

Gibson, Dunn & Crutcher LLP, New York City (Karin Portlock of counsel) and Michael T. Baker, Public Defender, Binghamton and Brooklyn Law School Legal Services Corp., Brooklyn, for appellant.
Mary E. Saitta, Special Prosecutor, Binghamton, for respondent.

Fisher, J.
Appeal from an order of the County Court of Broome County (Joseph F. Cawley, J.), entered August 29, 2022, which denied defendant's motion for resentencing pursuant to CPL 440.47, after a hearing.
In March 2017, defendant stabbed and killed her paramour during an altercation in their home. Defendant thereafter pleaded guilty to manslaughter in the first degree and was sentenced, pursuant to the terms of the plea agreement, to 10 years in prison, to be followed by five years of postrelease supervision. In December 2019, defendant requested permission from County Court to file an application for resentencing pursuant to the Domestic Violence Survivors Justice Act (hereinafter the DVSJA) (see CPL 440.47; Penal Law § 60.12, as amended by L 2019, ch 31, § 1; L 2019, ch 55, part WW, § 1). Having found that defendant met the statutory threshold eligibility requirements, permission was granted and defendant thereafter applied for resentencing under the DVSJA. Following a hearing, the court denied defendant's application. Defendant appeals.
The DVSJA, in recognition of the profound and pervasive trauma suffered by victims of substantial abuse, permits courts to impose more lenient sentences in certain cases where a victim of domestic violence commits crimes against his or her abuser or as a result of that abuse (see CPL 440.47 [1] [a]; [2] [c]; see also Penal Law § 60.12 [1]). The justification for the DVSJA was to align the realities — that 93% of women convicted of killing an intimate partner had been abused by such partner in the past — with compassion, assistance and appropriate justice, affording judges discretion to "fully consider the impact of domestic violence when determining sentence lengths" in order to avoid long, unfair prison sentences "when a survivor defends herself and her children" (Assembly Mem in Support, Bill Jacket, L 2019, ch 31 at 6). This shift was required, as acknowledged during the bill's enactment, because "all too often in our court system when women are defending themselves from domestic violence, instead of being met with compassion and assistance and help, they are met with punishment" (People v T.P., 216 AD3d 1469, 1471 [4th Dept 2023] [internal quotation marks, ellipsis and citation omitted]). Accordingly, as pertinent here, a defendant who meets certain threshold eligibility requirements may apply for resentencing under the DVSJA pursuant to CPL 440.47 (see CPL 440.47 [1], [2]). In considering such an application, a "court shall conduct a hearing to aid in making its determination of whether the applicant should be resentenced in accordance with [Penal Law § 60.12]" (CPL 440.47 [2] [e]). Pursuant to Penal Law § 60.12 (1), a court may apply an alternative sentencing scheme where it determines, following a hearing, that, "(a) at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household[*2]. . . ; (b) such abuse was a significant contributing factor to the defendant's criminal behavior; [and] (c) having regard for the nature and circumstances of the crime and the history, character and condition of the defendant, that a sentence of imprisonment pursuant to [Penal Law §§ 70.00, 70.02, 70.06 or 70.71 (2) or (3)] would be unduly harsh." For the reasons that follow, we conclude that County Court misapplied the DVSJA and erred in denying defendant's application for resentencing.
In addressing the first prong of the statutory analysis, County Court found that defendant had been a victim of domestic violence perpetrated by the paramour, with whom she had lived. Significantly, however, the court expressly noted that "no evidence was presented that, at the time of [the paramour's] death, he and . . . defendant were involved in an episode of domestic violence." We agree with defendant that, in so finding, the court misapplied the language of Penal Law § 60.12 (1) (a) by requiring that the abuse occur "at the time of the instant offense." Indeed, such temporal argument would inherently invoke the defenses of duress or justification, however, the legislative history makes it clear that the DVSJA was enacted to address shortfalls in each of those defenses, "as victims of abuse may not be psychologically or socially capable of invoking such defenses at the time of their trials, due to their victimization and its impact on them" (Rep of NY City Bar Criminal Justice Operations Comm, Domestic Violence Comm & Pro Bono & Legal Servs Comm, Bill Jacket, L 2019, ch 31 at 14). Rather, to be considered eligible for resentencing, a survivor is "required to include evidence corroborating the claim she was, at the time of the offense, a victim of domestic violence" (Assembly Mem in Support, Bill Jacket, L 2019, ch 31 at 6). It does not require that a survivor prove she was defending herself in an episode of domestic violence like either of those defenses.To be sure, the statutory language must create the requirement that some temporal nexus exist between the abuse and the offense, otherwise it would be rendered meaningless (see Penal Law § 60.12 [1] [a]; Matter of Mestecky v City of New York, 30 NY3d, 239, 243 [2017]; People v Williams, 198 AD3d 466, 466-467 [1st Dept 2021], lv denied 37 NY3d 1165 [2022]). However, nothing in the DVSJA requires a finding that the abuse and the offense occur contemporaneously, and to hold otherwise would be tantamount to requiring that a defendant make a showing akin to a justification defense in order to be entitled to its ameliorative sentencing scheme, which is inapposite to the legislative history (see NY City Bar Rep of Criminal Justice Operations Comm, Domestic Violence Comm & Pro Bono & Legal Servs Comm, Bill Jacket, L 2019, ch 31 at 14). Turning to the merits, upon our review, the record evidence amply demonstrates that defendant was subjected to years of substantial abuse by the paramour and that this abuse had been [*3]ongoing up to and including the underlying incident (see Penal Law § 60.12 [1] [a]).
As to the second prong of the analysis, County Court found that the abuse suffered by defendant "was a factor" in her commission of the crime, but failed to conclude as to whether it was a "significant contributing factor" as is required under the statute. Moreover, the court did not articulate a factual basis for its finding in this regard. The record reveals that, at the hearing, defendant testified that the incident occurred after she woke the paramour and he became "aggressive, . . . arguing . . . , screaming and pushing" and "cornered" her in a room. At that time, defendant felt "like [she] was going to lose [her] life" and that she "had no escape." Defendant could not recall the events thereafter, or whether she "had a knife[,]" only that she "snapped out of it" upon hearing her child's voice. She then realized that the paramour was injured and bleeding on the floor, and she called the police for help. She did not deny that she caused his injuries. Defendant acknowledged that she initially told the responding police officers that the paramour had slipped and injured himself, however, her repeated admissions thereafter were largely consistent with her hearing testimony. Relevantly, in a prior, police-reported domestic violence incident, the paramour had pulled a knife on defendant and her sister, threatening to stab the sister if she attempted to intervene while he dragged defendant by her hair. Upon this record, we find that the abuse suffered by defendant was a significant contributing factor to her offense (see Penal Law § 60.12 [1] [b]).
Turning to the final prong of the analysis, County Court's finding that a sentence within the standard statutory guidelines was appropriate was improperly based solely upon its belief that defendant's status as a victim of domestic violence had already been "factored into" her plea, as well as its comparison of her sentence with her potential sentencing exposure. Such findings are not relevant to the application of the DVSJA (see CPL 440.47; Penal Law § 60.12). Rather than merely weighing the merits of the original sentence and plea agreement in light of a defendant's domestic violence history, in reviewing an application under the DVSJA, Penal Law § 60.12 (1) (c) expressly provides that a determination as to whether a standard sentence would be "unduly harsh" is to be made in consideration of the "the nature and circumstances of the crime and the history, character and condition of the defendant." Although the court's written decision notes defendant's age, lack of criminal history and the fact that she is the mother of two children, no discussion is devoted to these circumstances or what weight they should be afforded in considering her resentencing application.
Our review of the record reveals that defendant had been subjected to years of ongoing and substantial physical and psychological abuse by the paramour, including [*4]in the presence of their children, up to the date of the incident. Prior to the incident, there are several police-reported incidents in the record noting various injuries to defendant, including lacerations, bruises and other physical harm for which she sought medical attention, as well as testimony from defendant and others who observed physical injuries on defendant. At the time of the offense, defendant was the 28-year-old mother of two young children. Her relationship with the paramour began when she was just 18-years-old — while still in high school — and while her decision-making skills were still developing from adolescence through young adulthood. Her efforts to maintain employment had been frustrated by the paramour's repeated misconduct, who, according to defendant, would cause a "scene" at her place of employment requiring coworkers to intervene, excessively calling or messaging her or otherwise alleging that she was "cheating" on him while at work and compelling her to quit. Defendant's meaningful relationships with her family were also frustrated by the paramour's controlling conduct, as he forebade her from spending time with her family and at times limited her contact with her family by confiscating her cell phone. When defendant was able to visit her family, the paramour sometimes accompanied her and stayed near her; one witness testified that defendant would appear "scared" during her visit with family when the paramour was present. The record further reveals that defendant had no prior criminal history and successfully participated in various educational and therapeutic programs during her period of incarceration, has family support and has expressed sincere remorse for her actions resulting in the paramour's death. She has also served over six years of her sentence, which is above the maximum allowed under the DVSJA for a class B felony such as defendant's conviction for manslaughter in the first degree (see Penal Law §§ 60.12 [2] [a]; 70.45 [2] [f]). Based on the foregoing, defendant's application for resentencing pursuant to CPL 440.47 should have been granted and a sentence pursuant to the DVSJA is warranted.
Accordingly, upon consideration of the appropriate factors and under the circumstances presented here, where defendant has already served the maximum permissible term of incarceration under the DVSJA, we modify the judgment ourselves (see Penal Law §§ 60.12 [2] [a]; 70.45 [2] [f]; People v Burns, 207 AD3d 646, 649 [2d Dept 2022]; People v Addimando, 197 AD3d 106, 117-118 [2d Dept 2021]).[FN1]
Lynch, J.P., Clark, Ceresia and Mackey, JJ., concur.
ORDERED that the order is reversed, on the law and the facts, motion granted, and defendant's sentence imposed on the conviction of manslaughter in the first degree is reduced to a term of incarceration of five years to be followed by 2½ years of postrelease supervision; and matter remitted to the County Court of Broome County for further proceedings pursuant to CPL 470.45.

Footnotes

Footnote 1: Defendant's time spent incarcerated in excess of the reduced sentence imposed by this Court should be credited toward her term of postrelease supervision (see Penal Law § 70.30 [5]; CPL 440.47 [4]).