People v Wendy B.-S. (2024 NY Slip Op 04003)

People v Wendy B.-S.

2024 NY Slip Op 04003

Decided on July 26, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 26, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., BANNISTER, MONTOUR, GREENWOOD, AND NOWAK, JJ.

494 KA 21-00422

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
WENDY B.-S., DEFENDANT-APPELLANT. 

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (SUSAN HUTCHISON OF COUNSEL), FOR DEFENDANT-APPELLANT.
MICHAEL J. KEANE, ACTING DISTRICT ATTORNEY, BUFFALO (HARMONY A. HEALY OF COUNSEL), FOR RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Christopher J. Burns, J.), dated September 17, 2020. The order denied the application of defendant for resentencing pursuant to CPL 440.47. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed.
Memorandum: Defendant was convicted in November 1989, upon a jury verdict, of murder in the second degree (Penal Law § 125.25 [1]) and two counts of intimidating a victim or witness in the first degree (§ 215.17 [1], [2]). The conviction arose from defendant's conduct in aiding her then-husband in the bludgeoning death of a friend, who had been cooperating with authorities by implicating defendant and her husband in other crimes, by calling the friend and luring him to the house where he was killed. Defendant was sentenced to concurrent terms of incarceration aggregating to 25 years to life. We affirmed defendant's judgment of conviction on direct appeal (People v Wendy S., 172 AD2d 1028 [4th Dept 1991], lv denied 78 NY2d 927 [1991]), and we later also affirmed the husband's judgment of conviction arising from the murder (People v Smythe, 210 AD2d 887 [4th Dept 1994], lv denied 85 NY2d 943 [1995]). Defendant remained incarcerated in April 2020 when she applied for resentencing pursuant to the Domestic Violence Survivors Justice Act (DVSJA) (see CPL 440.47; Penal Law
§ 60.12, as amended by L 2019, ch 31, § 1; L 2019, ch 55, part WW,
§ 1), but she was subsequently released to parole supervision in September 2020. Supreme Court thereafter denied her application for resentencing pursuant to the DVSJA, and defendant now appeals as of right (see CPL 440.47 [3] [a]). We affirm.
"The DVSJA, without diminishing the gravity of an offense, permits courts to impose alternative, less severe sentences in certain cases involving defendants who are victims of domestic violence" (People v Fisher, 221 AD3d 1195, 1196 [3d Dept 2023], lv denied 41 NY3d 1001 [2024]; see CPL 440.47; Penal Law § 60.12; People v Vilella, 213 AD3d 1282, 1283 [4th Dept 2023], lv denied 39 NY3d 1157 [2023]). A defendant who is confined while serving a sentence of a certain length for an offense committed prior to the effective date of the DVSJA and is eligible for an alternative sentence may request to apply for resentencing in accordance with Penal Law § 60.12 (see CPL 440.47 [1] [a]; People v Shawn G.G., 225 AD3d 1246, 1247 [4th Dept 2024]). If the court finds that the defendant has met the requirements to apply for resentencing, the court must notify the defendant that they may submit an application for resentencing (see CPL 440.47 [1] [c]). An application for resentencing must include certain pieces of evidence pursuant to the provisions of CPL 440.47 (2) (c) and, if the court finds that the defendant has complied with those provisions, it must "conduct a hearing to aid in making its determination of whether the applicant should be resentenced in accordance with [Penal Law
§ 60.12]" (CPL 440.47 [2] [e]; see Fisher, 221 AD3d at 1196). The court may impose an alternative sentence where it determines, upon a preponderance of the evidence following the [*2]hearing, that "(a) at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household as the defendant as such term is defined in [CPL 530.11 (1)]; (b) such abuse was a significant contributing factor to the defendant's criminal behavior; [and] (c) having regard for the nature and circumstances of the crime and the history, character and condition of the defendant, that a sentence of imprisonment pursuant to [Penal Law §§ 70.00, 70.02, 70.06 or 70.71 (2) or (3)] would be unduly harsh" (Penal Law
§ 60.12 [1]; see Fisher, 221 AD3d at 1196-1197; People v T.P., 216 AD3d 1469, 1471-1472 [4th Dept 2023]; People v Addimando, 197 AD3d 106, 112 [2d Dept 2021]).
There is no dispute in this case that, at the time of the underlying offenses, defendant was "a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by" the husband (Penal Law § 60.12 [1] [a]; see T.P., 216 AD3d at 1471-1472). As the court properly determined and defendant correctly contends, there is ample evidence in the record that the husband, who was manipulative and controlling, subjected defendant to numerous acts of physical brutality, as well as emotional and psychological abuse, including threatening to harm defendant's young son from another relationship. Defendant thus indisputably fulfilled the first prong of the statutory analysis (see § 60.12 [1] [a]).
The court nonetheless further determined under the second prong of Penal Law § 60.12 (1) that the abuse suffered by defendant was not a significant contributing factor to her criminal behavior related to the victim's death. We agree with defendant that the court erred in that regard. In evaluating whether the abuse was "a significant contributing factor to the defendant's criminal behavior" (§ 60.12 [1] [b]), a court should "consider the cumulative effect of the abuse together with the events immediately surrounding the crime, paying particular attention to the circumstances under which [the] defendant was living and adopting a 'full picture' approach in its review" (People v Smith, 69 Misc 3d 1030, 1038 [Erie County Ct 2020]; see People v Brenda WW., 222 AD3d 1188, 1192-1193 [3d Dept 2023], citing Smith, 69 Misc 3d at 1038; People v Burns, 207 AD3d 646, 648-649 [2d Dept 2022]).
Here, we agree with defendant that the cumulative effect of the husband's abuse, along with the events immediately surrounding the crimes, demonstrates that the abuse was a significant contributing factor to defendant's conduct in calling the victim and luring him to the house. The husband had repeatedly and violently abused defendant throughout their relationship, and defendant feared for the safety of herself and her son. The record establishes that defendant—whether out of fear of harm at the hands of the husband or as the result of actual threats and physical harm inflicted on the day of the murder—complied with the husband's demand that she call the victim, with whom she was a close friend, and invite him to the house. In sum, upon "[c]onsidering the cumulative effect of . . . defendant's abuse at the hands of [the husband], together with the events immediately surrounding the crimes, and paying particular attention to the circumstances under which . . . defendant was living," we conclude that "the preponderance of the evidence demonstrates that the [husband's] abuse was a [significant] contributing factor to [defendant's criminal behavior related to] the murder of [the victim]" (Burns, 207 AD3d at 648-649).
None of the court's reasons for reaching a contrary conclusion survive scrutiny. First, contrary to the court's conclusion that defendant's alcohol and drug abuse at the time of the crimes established that her conduct could not be attributed to the abuse, we conclude that "such factors do not negate the aforementioned history of abuse suffered by defendant and whether it played a significant role in her behavior" (Brenda WW., 222 AD3d at 1192). Second, the court's determination that defendant could not credibly claim that the domestic abuse she endured was a significant contributing factor to her criminal behavior because she had, over the years, given minimally inconsistent accounts of her role in the victim's death, cannot be reconciled with the modern understanding of the effects of domestic violence as both embodied in the DVSJA and emphasized by defendant's trauma counselor at the hearing (see People v Liz L., 221 AD3d 1288, 1291 [3d Dept 2023]; see generally Deborah Epstein & Lisa A. Goodman, Discounting Women: Doubting Domestic Violence Survivors' Credibility and Dismissing Their Experiences, 167 U Pa L Rev 399, 405-406 [2019]). Third, the court's reliance on the trial court's pontification during the original sentencing proceeding that defendant had manipulated and controlled the husband, not the other way around, is misplaced because, as defendant contends, that interpretation of the relationship lacks support in the record before us and appears grounded in "outdated notions [*3]regarding domestic violence issues" (Addimando, 197 AD3d at 117).
Nevertheless, we conclude that defendant is not entitled to resentencing pursuant to the DVSJA because, under the third prong of the statutory analysis, the original sentence is not "unduly harsh" in light of the "nature and circumstances of the crime and the history, character and condition of the defendant" (Penal Law § 60.12 [1] [c]; see Fisher, 221 AD3d at 1197-1198). The crimes for which defendant was convicted—i.e., aiding her husband in the fatal bludgeoning of the victim as reprisal for and prevention of the victim's cooperation with authorities in implicating defendant and the husband in other crimes—were as brutal as they were reprehensible (see Fisher, 221 AD3d at 1197-1198). Although defendant has been somewhat inconsistent over the years about her precise knowledge of the husband's intentions for the victim at the time she placed the call to lure him to the location, the record before us establishes by a preponderance of the evidence that defendant knew, even if indirectly, that the victim was going to be killed. Additionally, despite some admirable accomplishments and engagement in services while incarcerated, defendant committed a remarkably extensive number of disciplinary violations while in prison, including for drug use. Inasmuch as defendant is no longer incarcerated and has been released to lifetime parole supervision, she seeks resentencing solely for the purpose of shortening the period—and ultimately relieving her—of postrelease supervision. However, defendant's criminal history, both before and during the relationship with the husband, and her continued difficulty in conducting herself appropriately as evinced by her extensive disciplinary history throughout her incarceration, coupled with her apparent success thus far while on supervision in the community, suggest that supervision continues to serve important purposes in defendant's case (cf. People v S.M., 72 Misc 3d 809, 816 [Erie County Ct 2021]). Thus, although defendant has been released to parole supervision, given her criminal and disciplinary history as well as her need for services, we conclude that, contrary to defendant's contention, lifetime parole supervision does not render her sentence unduly harsh and she should not be resentenced pursuant to the DVSJA (see People v Rangel, 195 AD3d 541, 542 [1st Dept 2021], lv denied 37 NY3d 1098 [2021]).
Finally, we note that our affirmance of the order on the aforementioned ground does not violate CPL 470.15 (1). The Court of Appeals has construed that statute as "a legislative restriction on the Appellate Division's power to review issues either decided in an appellant's favor, or not ruled upon, by the trial court" (People v LaFontaine, 92 NY2d 470, 474 [1998], rearg denied 93 NY2d 849 [1999]; see People v Butler, 41 NY3d 186, 199 [2023]; People v Nicholson, 26 NY3d 813, 825 [2016]). The statute thus "bars [the Appellate Division] from affirming a judgment, sentence or order on a ground not decided adversely to the appellant by the trial court" (People v Concepcion, 17 NY3d 192, 195 [2011]; see Nicholson, 26 NY3d at 825). Consequently, "LaFontaine and its progeny preclude our review of an entirely distinct alternative ground for affirmance which the court of first instance did not decide adversely to the appellant" (People v Garrett, 23 NY3d 878, 885 n 2 [2014], rearg denied 25 NY3d 1215 [2015]). Critically, however, in cases involving consideration of "a single multipronged legal ruling" rather than a "separate and analytically distinct" alternative ground for affirmance that the trial court did not decide adversely to the appellant, LaFontaine and its progeny do not preclude our review of all aspects of the ruling even when the trial court did not address a particular prong thereof (id.; see People v Reynolds, 211 AD3d 1493, 1494 [4th Dept 2022], lv denied 39 NY3d 1079 [2023]; People v Case, 197 AD3d 985, 986 [4th Dept 2021], lv denied 37 NY3d 1160 [2022]).
Here, the court's determination whether defendant should be resentenced pursuant to the DVSJA (see CPL 440.47; Penal Law § 60.12) involves "a single multipronged legal ruling" (Garrett, 23 NY3d at 885 n 2; see Penal Law § 60.12 [1]; Brenda WW., 222 AD3d at 1193; Liz L., 221 AD3d at 1290-1291; Addimando, 197 AD3d at 111). Thus, our determination affirming the order on the ground that defendant did not fulfill the third prong of the statutory analysis, which the court did not address given its determination on the second prong, does not constitute "the type of appellate overreaching prohibited by CPL 470.15 (1)" because such affirmance is not "on grounds explicitly different from those of the trial court, or on grounds that were clearly resolved in a defendant's favor" (Nicholson, 26 NY3d at 826; see Garrett, 23 NY3d at 885 n 2; Reynolds, 211 AD3d at 1494; Case, 197 AD3d at 986).
Entered: July 26, 2024
Ann Dillon Flynn
Clerk of the Court