People v Rebecca XX. (2024 NY Slip Op 04645)

People v Rebecca XX.

2024 NY Slip Op 04645

Decided on September 26, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 26, 2024

CR-22-1972
[*1]The People of the State of New York, Respondent,
v
Rebecca XX., Appellant.

Calendar Date:September 10, 2024

Before:Egan Jr., J.P., Pritzker, Lynch, McShan and Powers, JJ.

Veronica Reed, Schenectady, for appellant.
William G. Gabor, District Attorney, Wampsville (J. Sam Rodgers of counsel), for respondent.

Egan Jr., J.P.
Appeal from an order of the County Court of Madison County (Patrick J. O'Sullivan, J.), entered August 8, 2022, which denied defendant's motion for resentencing pursuant to CPL 440.47, after a hearing.
In 2005, defendant's fiancÉ (hereinafter the victim) returned from the store after picking up food for defendant and, as he was ascending the stairs into their home, defendant shot him with a 20 gauge shotgun at close range, striking him in the neck/shoulder. The victim ultimately bled to death. Defendant thereafter pleaded guilty to murder in the second degree, and County Court (McDermott, J.) sentenced her to a prison term of 20 years to life. Defendant's conviction was affirmed by this Court.
In 2022, County Court (O'Sullivan, J.)[FN1] granted defendant's application for permission to move for resentencing pursuant to the provisions of the Domestic Violence Survivors Justice Act (hereinafter DVSJA) (see CPL 440.47; Penal Law § 60.12, as amended by L 2019, ch 31, § 1; L 2019, ch 55, part WW, § 1).[FN2] Following a hearing, the court denied the application for resentencing, finding that defendant did not demonstrate by a preponderance of the evidence that she was the victim of substantial domestic violence that was a significant contributing factor to the crime and that the sentence imposed was not unduly harsh. Defendant appeals.
The DVSJA, recognizing the profound and pervasive trauma suffered by a victim of substantial abuse, permits a court in certain appropriate cases to impose a more lenient sentence where the defendant commits an offense as a result of the inflicted abuse (see CPL 440.47; Penal Law § 60.12; People v T.P., 216 AD3d 1469, 1471 [4th Dept 2023], lv granted 41 NY3d 1004 [2024]). To that end, Penal Law § 60.12 (1) permits the court to impose an alternative sentencing scheme where it determines that the defendant establishes by a preponderance of the evidence that, "(a) at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household; (b) such abuse was a significant contributing factor to the defendant's criminal behavior; and (c) having regard for the nature and circumstances of the crime and the history, character and condition of the defendant, that a sentence of imprisonment pursuant to [the standard statutory sentencing guidelines] would be unduly harsh" (People v Liz L., 221 AD3d 1288, 1289-1290 [3d Dept 2023] [internal quotation marks, ellipsis and brackets omitted]; see People v Angela VV., 229 AD3d 955, 956 [3d Dept 2024]; People v Brenda WW., 222 AD3d 1188, 1189 [3d Dept 2023]; People v Addimando, 197 AD3d 106, 111 [2d Dept 2021]).
We agree with County Court that, other than defendant's self-reporting of the physically, sexually and mentally abusive nature of the relationship, there was insufficient evidence to demonstrate that, at the time of the offense, defendant was the victim of substantial [*2]domestic violence or that the abuse was a contributing factor to her criminal behavior. The record establishes that the seven-year relationship between defendant and the victim began while defendant was working as an escort. Defendant thereafter moved in with the victim, having her own separate bedroom. The victim provided defendant with a new car, gifts, $500 every two weeks and provided various financial support for some of defendant's family members. Defendant eventually became engaged to the victim, referring to him, even at the resentencing hearing, as her fiancÉ.
On the day of the murder, defendant drank "a lot" of alcohol while out with her parents celebrating the fact that the victim acquired property in Myrtle Beach, South Carolina — where defendant often went without the victim — and became intoxicated. Around 8:00 p.m., defendant's parents drove defendant home, helped her inside, stayed for a brief period and, as everything looked fine, they left. Between the time defendant's parents left and the time the victim went to the store to pick up food for defendant, defendant testified that the victim told her that she would have to have sex with him later, gave her sleeping pills and refused to drive her to her daughter's house, although he took her on a car ride and drove "really fast," scaring her. Defendant's daughter provided a statement on the day of the offense that around 8:45 p.m. that night she received a call from defendant, who was drunk, asking to be picked up to come to the daughter's house. According to the daughter's statement, the daughter could hear defendant and the victim yelling at each other and the victim saying that he was not taking defendant anywhere because she was drunk, had been up for over 24 hours and needed to lie down. The daughter spoke with the victim, explaining that she had to work and did not want defendant to come over. Defendant got back on the phone with the daughter, telling her that the victim, whom defendant at that point referred to as a "fat bastard," refused to drive her anywhere.
After the phone call, the victim went to a local store to pick up food, where he was seen on a surveillance video arriving at approximately 9:28 p.m. and leaving around 9:42 p.m.. When the victim returned and was walking up the stairs, defendant shot him in the neck and shoulder area from about three steps away with a 20 gauge shotgun. A 911 call was not made until defendant's daughter arrived over an hour later, leaving the victim, who was still breathing during that time, to bleed to death.
In support of establishing substantial domestic abuse at the time of the offense, defendant relied primarily on her self-reported history of the physical, sexual and mental abuse that the victim subjected her to during their relationship. Specifically, defendant testified that she would have bruises on her arms from the physical abuse inflicted by the victim, that she was sexually abused, characterizing herself as the victim's sex [*3]slave, and that she was mentally abused because the victim threatened to take everything away and had "put [her] up so high" that she could not make it financially without him, all of which she attributed to her recent suicide attempts. As noted by County Court, however, defendant presented no corresponding evidence, such as medical, psychiatric or police records or photographs, in support of her claims of domestic abuse. Notably, the presentence report indicated that, despite defendant's questionable description of being the victim's "sex slave," there was no evidence suggesting that the victim was violent during the relationship.
As for the testimony of defendant's two daughters at the hearing, County Court found that their testimony lacked credibility as it contradicted various aspects of their prior statements given to law enforcement and probation around the time of the murder. In addition to the fact that the court "had the benefit of observing [their] testimony firsthand, including [their] demeanor and manner in which [they] answered questions," we note that our independent review of their testimony supports such an assessment. As such, we defer to County Court's credibility determination regarding such testimony (People v Angela VV., 229 AD3d at 956-957). Significantly, the daughters' affidavits and testimony at the hearing asserting, among other things, that they observed and were aware of the physical, sexual and mental abuse by the victim against defendant during the relationship directly contradicts their statements to law enforcement and probation around the time of the offense. Their statements at the time of the offense and testimony at the resentencing hearing also reflect other inconsistencies, including the nature and extent of defendant's alcohol and substance abuse.
In view of the foregoing, the record supports County Court's finding that there is insufficient evidence to demonstrate by a preponderance of the evidence that, around the time of the offense, she was subjected to substantial abuse or that such abuse was a significant contributing factor in the commission of the offense (see People v Fisher, 221 AD3d 1195, 1197 [3d Dept 2023], lv denied 41 NY3d 1001 [2024]; People v Williams, 198 AD3d 466, 466-467 [1st Dept 2021], lv denied 37 NY3d 1165 [2022]). Further, considering the nature and circumstances of the crime and defendant's history and character, we do not find that the sentence was unduly harsh (see Penal Law § 60.12 [1]). As such, the court did not err in denying defendant's application for resentencing pursuant to CPL 440.47.
Pritzker, Lynch, McShan and Powers, JJ., concur.
ORDERED that the order is affirmed.

Footnotes

Footnote 1: Defendant's resentencing application was not before the judge who imposed the underlying sentence as the record reflects that said judge had since retired.

Footnote 2: The People's subsequent motion for reargument was denied.