People v Niquasia MM. (2024 NY Slip Op 04638)

People v Niquasia MM.

2024 NY Slip Op 04638

Decided on September 26, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 26, 2024

113302
[*1]The People of the State of New York, Respondent,
v
Niquasia MM., Also Known as Quada, Appellant.

Calendar Date:September 5, 2024

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Craig Meyerson, Peru, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

McShan, J.
Appeal from an order of the County Court of Schenectady County (Matthew J. Sypniewski, J.), entered July 6, 2021, which denied defendant's motion for resentencing pursuant to CPL 440.47, after a hearing.
In full satisfaction of an 11-count indictment, defendant pleaded guilty to robbery in the first degree — a class B violent felony committed while she was on probation — and was sentenced, as a second felony offender, to a prison term of nine years, to be followed by five years of postrelease supervision. An order of protection was entered in favor of the victim, who at the time of the December 2016 robbery was pregnant. In January 2021, defendant moved for resentencing pursuant to CPL 440.47 seeking to invoke the alternative sentencing provisions of the Domestic Violence Survivors Justice Act (see CPL 440.47; Penal Law § 60.12, as amended by L 2019, ch 31, § 1; L 2019, ch 55, § 1, part WW, § 1). Following a hearing, County Court denied defendant's application finding, among other things, that any domestic violence defendant may have suffered at the hands of either her biological mother or the father of her child was not a "significant contributing factor to her criminal behavior" in perpetrating what the court found to be a "calculated" and "premediated" crime. County Court further found, upon considering the nature and circumstances of the crime — which entailed, among other things, restraining and pouring toxic household cleaning products over the pregnant victim — and defendant's character and history, that the sentence originally imposed was not unduly harsh. This appeal ensued.[FN1]
We affirm. Defendant bore the burden of establishing — by a preponderance of the credible evidence (see People v Addimando, 197 AD3d 106, 112 [2d Dept 2021]) — that she was a victim of domestic violence inflicted by a member of the same family or household at the time of the offense, that such abuse was a significant contributing factor to her criminal behavior and that, "having regard for the nature and circumstances of the crime and the history, character, and condition of the defendant, a sentence in accordance with the customary statutory sentencing guidelines would be unduly harsh" (People v Burns, 207 AD3d 646, 648 [2d Dept 2022]; see Penal Law § 60.12; People v Liz L., 221 AD3d 1288, 1289-1290 [3d Dept 2023]).
Upon appeal, defendant essentially contends that her history of abuse negatively affected her "social abilities and interactions with others" — particularly with respect to any individual outside of her family who made her angry. Indeed, at the underlying hearing, defendant testified that the robbery was the result of the victim, who was two weeks shy of her due date, becoming "irate" with defendant, prompting defendant to respond in kind. With respect to the specific statutory requirements, although defendant testified that she was physically and emotionally abused by both her biological mother and the father of her child, the record fails to reflect [*2]that, "at the time of the instant offense," any such abuse was "inflicted by a member of the same family or household as 
. . . defendant" (Penal Law § 60.12 [1] [a]). To be sure, the statute "does not require that the abuse occur simultaneously with the offense . . . , [but] the 'at the time of' language must create some requirement of a temporal nexus between the abuse and the offense or else it is meaningless" (People v Williams, 198 AD3d 466, 466-467 [1st Dept 2021], lv denied 37 NY3d 1165 [2022]; see People v Liz L., 221 AD3d at 1290; People v Fisher, 221 AD3d 1195, 1197 [3d Dept 2023], lv denied 41 NY3d 1001 [2024]). In this regard, defendant's testimony as to when she resided with either her mother or her child's father was vague and imprecise. Defendant apparently moved out of her mother's home when she was a "teenager," and although the record contains a police report documenting a domestic violence incident involving the child's father in January 2016, that report, which states that the child's father "came over and wanted to talk," strongly suggests that defendant and the child's father were not members of the same household at that time — much less when the robbery occurred in December 2016. In short, defendant's proof does not reflect "that the abuse or abusive relationship[s] [were] ongoing" at the time of the robbery (People v Williams, 198 AD3d at 467; see People v James NN., 224 AD3d 1014, 1015 [3d Dept 2024], lv denied 42 NY3d 927 [2024]; People v Fisher, 221 AD3d at 1197; compare People v Liz L., 221 AD3d at 1290-1291). For these reasons, we are not persuaded that defendant satisfied the first prong of the statute.
As to the remaining requirements, we agree with County Court that defendant also failed to establish that any abuse she suffered "was a significant contributing factor to [her] criminal behavior" (Penal Law § 60.12 [1] [b]). The only proof offered on this point was defendant's own testimony, wherein she asserted in an otherwise unsubstantiated fashion that "[t]he multitude of abuse . . . inflicted on [her] eventually just led to [her] actions" on the day of the robbery. According to defendant, who conceded that she frequently attacked and fought with people who angered her, her actions on the day of the robbery were "triggered" by the victim becoming "irate" while the two were conversing. Noticeably absent from the record is any psychological or other expert evaluation opining that defendant's abusive past was a significant contributing factor to the robbery (compare People v Brenda WW., 222 AD3d 1188, 1191-1192 [3d Dept 2023]), and any assertion in this regard is belied by defendant's statement to the Probation Department, wherein she acknowledged that she and her codefendant "had planned to rob [the victim one day earlier], but it didn't happen that day because [defendant] got too busy." Defendant's own statement both amply supports County Court's finding that defendant's actions reflected a "calculated" and "premediated[*3]" crime and seriously undermines any assertion that her abusive history was a substantial contributing factor to her actions on the day of the robbery.
That said, even if we otherwise were persuaded that defendant's proof was sufficient up to this point, we nonetheless would conclude, "having regard for the nature and circumstances of the crime and the history, character, and condition of the defendant" (Penal Law § 60.12 [1] [c]), that defendant's application for resentencing was properly denied. To be sure, the statute does not require "that the abuser be the target of the offense" (People v Williams, 198 AD3d at 466; see People v Burns, 207 AD3d at 648-649), but the fact that defendant affirmatively sought out the victim — under the guise of bringing her baby clothes — cannot be overlooked. Although defendant testified at the hearing that she did not go to the victim's residence intending to rob her, such testimony is in stark contrast to defendant's statement to the Probation Department, wherein — as noted previously — she candidly acknowledged that she planned to rob the victim from the outset. Similarly, although defendant testified at the hearing that she was unable to recall the details of the robbery, she readily acknowledged in her statement to the police that she punched the victim in the face at least three times, "grabbed [her] by the hair and threw her to the ground" before tying the victim's wrists and feet together and locking her in a closet.[FN2] During the course of the robbery, the victim was sprayed with household chemicals and a bucket of water mixed with a cleaning solution was dumped over her head; although defendant attributed these actions to her codefendant, the victim implicated defendant as well. When asked by the Probation Department why she robbed the victim, defendant stated, "I did it because I needed the money." Against this backdrop, and given the vulnerable state of the victim and the nature of the underlying crime, we cannot say that the original sentence imposed was unduly harsh. Accordingly, County Court properly denied defendant's application for resentencing.
Clark, J.P., Aarons, Reynolds Fitzgerald and Mackey, JJ., concur.
ORDERED that the order is affirmed.

Footnotes

Footnote 1: Although County Court issued a bench ruling at the conclusion of the June 9, 2021 hearing, its written order was not entered until July 6, 2021, thereby rendering defendant's June 10, 2021 notice of appeal premature. "In the interest of judicial economy, we will excuse the defect, treat the notice of appeal as valid and address the merits" (People v Harvey, 202 AD3d 1296, 1296 n 1 [3d Dept 2022] [citations omitted]).

Footnote 2: Defendant's written statement further reflects that she was "sorry for tying up [the victim] but not for hitting her."