People v Ava OO. (2024 NY Slip Op 06245)

People v Ava OO.

2024 NY Slip Op 06245

Decided on December 12, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 12, 2024

113266
[*1]The People of the State of New York, Respondent,
v
Ava OO., Appellant.

Calendar Date:October 9, 2024

Before:Garry, P.J., Reynolds Fitzgerald, Fisher, McShan and Powers, JJ.

Aaron A. Louridas, Delmar, for appellant.
P. David Soares, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

Powers, J.
Appeal from a judgment of the Supreme Court (Roger D. McDonough, J.), rendered November 19, 2021 in Albany County, convicting defendant upon her plea of guilty of the crime of robbery in the second degree.
Defendant and her codefendant, who was also her romantic partner, were charged in an indictment with robbery in the second degree and grand larceny in the third degree stemming from allegations that they lured the victim to a hotel room and robbed him. In satisfaction of the foregoing and numerous other pending charges, defendant pleaded guilty to robbery in the second degree with the understanding that she would be sentenced to a prison term of no less than five years and no more than seven years, to be followed by five years of postrelease supervision.[FN1] As part of this plea, defendant purported to waive her right to appeal. Prior to sentencing, defendant submitted a memorandum seeking to invoke the alternative sentencing provisions of the Domestic Violence Survivors Justice Act (hereinafter DVSJA) (see Penal Law § 60.12, as amended by L 2019, ch 31, § 1; L 2019, ch 55, part WW, § 1). Supreme Court denied the request after a hearing, finding that domestic abuse was not a significant contributing factor to defendant's criminal conduct, and sentenced defendant to a prison term of five years, to be followed by five years of postrelease supervision. Defendant appeals.
As we find that, under the facts presented here, defendant should have been granted compassionate sentencing, we reverse. Initially, the People concede, and our review of the record confirms, that defendant's waiver of appeal is invalid. The written appeal waiver signed by defendant contained overbroad language, and Supreme Court's oral colloquy did not overcome this defect by ensuring defendant understood that some appellate rights survived the waiver (see People v Stratton, 201 AD3d 1201, 1202 [3d Dept 2022], lv denied 38 NY3d 1036 [2022]; People v Robinson, 195 AD3d 1235, 1236 [3d Dept 2021]).
As to the merits of defendant's application for compassionate sentencing pursuant to the DVSJA, "without diminishing the gravity of an offense, [the DVSJA] permits courts to impose alternative, less severe sentences in certain cases involving defendants who are victims of domestic violence" (People v Fisher, 221 AD3d 1195, 1196 [3d Dept 2023], lv denied 41 NY3d 1001 [2024]). Under the DVSJA, a court may apply an alternative sentencing scheme when it determines, after a hearing, that, "(a) at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household as the defendant as such term is defined in [CPL 530.11]; (b) such abuse was a significant contributing factor to the defendant's criminal behavior; [and] (c) having regard for the nature and circumstances of the crime and the history, character and condition of the defendant, that a sentence of imprisonment [*2]pursuant to [Penal Law § 70.00, 70.02, 70.06 or 70.71 (2) or (3)] would be unduly harsh" (Penal Law § 60.12 [1]; see People v Angela VV., 229 AD3d 955, 956 [3d Dept 2024], lv granted 42 NY3d 941 [2024]; People v Brenda WW., 222 AD3d 1188, 1189 [3d Dept 2023]). A defendant seeking an alternative sentence under the DVSJA must prove by a preponderance of the evidence the facts necessary to support the motion (see People v Boyd P., ___ AD3d ___, ___, 2024 NY Slip Op 05608, *2 [3d Dept 2024]; People v Angela VV., 229 AD3d at 956; People v Addimando, 197 AD3d 106, 112 [2d Dept 2021]). "To establish a fact by a preponderance of the evidence means to prove that the fact is more likely than not to have occurred" (Matter of Beautisha B. [Racquirine A.], 115 AD3d 854, 854 [2d Dept 2014] [citation omitted]).
As to the first prong of the statutory analysis, it is undisputed that defendant was romantically involved with the codefendant who, at the time of the instant offense, subjected her to substantial physical, sexual and psychological abuse. The record, including the hearing testimony and photographs of defendant, reflects that during the seven-month period leading up to the crime in question, the codefendant threatened to kill her, as he claimed to have done to another woman, and forced her to prostitute herself. The codefendant also punched and kicked defendant, bit her in the face, stabbed her in the leg and struck her over the head with various objects, resulting in injuries including a broken nose, blackened eyes and various lacerations. Accordingly, the record confirms that defendant proved the first prong of Penal Law § 60.12 (1) by a preponderance of the evidence (see People v Wendy B.-S., 229 AD3d 1317, 1319 [4th Dept 2024], lv denied ___ NY3d ___ [Oct. 31, 2024]).
Turning to the second prong, the DVSJA requires that the abuse that the defendant has suffered be a "significant contributing factor" to the criminal conduct at issue — not the sole or even the primary cause (compare Penal Law former § 60.12, with Penal Law § 60.12, as amended by L 2019, ch 31, § 1; L 2019, ch 55, § 1, part WW, § 1; see People v Smith, 69 Misc 3d 1030, 1037 [Erie County Ct 2020]; see generally People v Burns, 207 AD3d 646, 648-649 [2d Dept 2022]). Rather, the DVSJA expressly permits a defendant to establish that the abuse constituted a significant contributing factor to his or her criminal conduct regardless of whether he or she can establish entitlement to a defense that would negate his or her culpability, such as duress or justification (see Penal Law § 60.12 [1]; see also People v Brenda WW., 222 AD3d at 1192; People v Addimando, 197 AD3d at 117). Accordingly, a reviewing court's assessment of whether the abuse suffered by a defendant was a significant contributing factor to his or her criminal conduct "should consider the cumulative effect of the abuse together with the events immediately surrounding the crime, paying particular attention to the circumstances under [*3]which the defendant was living and adopting a full picture approach in its review" (People v Wendy B.-S., 229 AD3d at 1319 [internal quotation marks, brackets and citation omitted]; see People v D.L., 72 Misc 3d 257, 264 [Columbia County Ct 2021]). In other words, although the events directly related to the criminal conduct at issue are relevant to a court's evaluation of the role a defendant's abuse played in his or her behavior, these events should not be viewed in isolation from the surrounding circumstances of defendant's abuse.
Further, the circumstances before us bring focus to the ameliorative effect of the DVSJA, inasmuch as the new statutory language remedied the omission in the prior iteration of Penal Law § 60.12 "to account for crimes committed by abuse survivors at the behest of, but not against, their abusers, which omit[ted] a significant number of domestic violence survivor-defendants" (NYC Bar Assn, Report on Legislation by the Criminal Justice Operations Committee, Domestic Violence Committee and Pro Bono and Legal Services Committee, Bill Jacket, L 2019, ch 31 at 13; see People v Niquasia MM., 230 AD3d 1473, 1473-1474 [3d Dept 2024]). That expansion of eligibility is highlighted here, as we are presented with a defendant who was undoubtedly the subject of extensive abuse that encompassed all the hallmarks of sex trafficking.
It is through this prism which we must evaluate whether that abuse was a significant contributing factor to defendant's engagement, together with the codefendant who was her abuser, in a scheme to rob a victim who was soliciting sexual acts from defendant. While we note that defendant took an active role in robbing the victim, and the communications suggest that she was working in tandem with the codefendant, we must not view defendant's criminal conduct in a vacuum. During the crime, defendant was providing the codefendant, who was hiding in the hotel bathroom when defendant had brought the victim back with her, with cues as to when to emerge and initiate the robbery. However, defendant was consistently questioned by the codefendant on whether and when to attack, which persisted from the moment defendant was with the victim. Additionally, defendant was told by the codefendant that he was going to strike the victim and he instructed her to "tell him to give me everything." These facts suggest that the codefendant's plan to rob the victim was hatched well before the victim arrived.
The record reflects that, prior to meeting the codefendant, defendant had no criminal record, but suffered from various emotional and mental health issues that were exacerbated by the ongoing COVID-19 pandemic. After losing her job during that period, defendant stopped taking her prescription medication and began abusing illegal drugs. The codefendant took advantage of those circumstances and, shortly after the two met in December 2020, defendant became reliant on him to support her drug addictions. Further, defendant immediately [*4]became a victim of physical abuse. Indeed, the photographs entered into the record paint a harrowing picture of the physical abuse suffered by defendant at the codefendant's hands, which included being stabbed, punched and bitten. The record also evidences that the codefendant subjected defendant to a myriad of other forms of abuse, including frequent threats of death and forced prostitution in order to fuel his drug habit. The codefendant took steps to isolate defendant from her family by disrupting their efforts to contact defendant and constantly moving her to different locations to thwart any attempts to intervene and remove her from the abusive relationship. According to defendant's mother, on the few occasions that she was able to speak with defendant, defendant consistently expressed being "afraid," "sick" and "beat up" to the point that she suffered seizures. Consistent with that history, on the morning of the robbery, the codefendant sent defendant messages threatening that he would find her and kill her. As explained by defendant and evidenced by her communications with the codefendant on the day of the crime, defendant was required to engage in two different acts of prostitution prior to her encounter with the victim, while the codefendant hid in the bathroom.
Based upon the foregoing proof, it is evident that defendant was the victim of sex trafficking at the hands of the codefendant, as she had frequently engaged in sexual acts and robbery schemes like the one at issue at his behest and, by all indications, had very little control over her life at the time that the crime took place. The climate of fear and acquiescence imposed by the codefendant manifested on the day of the crime through acts of sex trafficking, physical abuse and threats to her life. Accordingly, the fact that defendant willingly participated in the robbery, which came after she had already been sex trafficked and threatened by the codefendant earlier in the day, is indicative of his manipulation and further suggests that such actions were undertaken by defendant to protect herself from further abuse (see NYC Bar Assn, Report on Legislation by the Criminal Justice Operations Committee, Domestic Violence Committee and Pro Bono and Legal Services Committee, Bill Jacket, L 2019, ch 31 at 13).[FN2] For these reasons, defendant established by a preponderance of the evidence that the abuse she suffered was a significant contributing factor to her criminal behavior (see People v Wendy B.-S., 229 AD3d at 1320; People v Burns, 207 AD3d at 649; see also People v Liz L., 221 AD3d 1288, 1291 [3d Dept 2023]).
As to the third and final prong of the statutory analysis, while not disregarding the impact of defendant's criminal behavior or that the sentence imposed was part of a negotiated plea which encompassed various other pending charges, considering "the nature and circumstances of the crime and the history, character and condition of" defendant, we find that a reduced sentence pursuant [*5]to the DVSJA is warranted (Penal Law § 60.12 [1] [c]). The compassionate sentencing alternatives provided by the DVSJA are not intended to absolve individuals of criminal liability; rather, the reforms permit courts to give appropriate consideration to the context of a defendant who has engaged in criminal behavior that is tethered to his or her victimhood from a domestic abuser "without diminishing the gravity of" his or her actions (People v Fisher, 221 AD3d at 1196; see People v Addimando, 197 AD3d at 117). As evidenced by the hearing transcript, despite the turmoil that had enveloped her life since December 2020, defendant has the continued support of her family who had continuously sought to aid her only to be repeatedly frustrated by the actions of the codefendant.[FN3] Although defendant's criminal history is now extensive, the entirety of it arose after she became involved with the codefendant, which emphasizes the deleterious impact he had on her and, consequently, serves to mitigate her criminal history (see generally People v Brenda WW., 222 AD3d at 1194). Based upon these facts, defendant has established by a preponderance of the evidence that traditional sentencing would be unduly harsh and, thus, she is deserving of compassionate relief pursuant to the DVSJA (see Penal Law § 60.12 [1] [c]).
As defendant committed a Class C violent felony (see Penal Law §§ 70.02 [1] [b]; 160.10), upon being granted compassionate sentencing, she must be sentenced to a determinate term of at least 1 year and not to exceed 3½ years (see Penal Law § 60.12 [2] [b]), to be followed by a period of postrelease supervision of between 2½ to 5 years (see Penal Law § 70.45 [2] [f]). Accordingly, based upon the facts presented, we find that the maximum permissible term of both incarceration and postrelease supervision is warranted here.
Garry, P.J., Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
Ordered that the judgment is modified, on the law and the facts, by resentencing defendant to a prison term of 3½ years, to be followed by five years of postrelease supervision; matter remitted to the Supreme Court for further proceedings pursuant to CPL 470.45; and, as so modified, affirmed.

Footnotes

Footnote 1: At sentencing, the People recommended that Supreme Court impose a prison term of no less than five years and no more than 5½ years.

Footnote 2: Defendant's behavior is typical of individuals who have become embroiled in the snare of sex trafficking, as they are often compelled to engage in a litany of offenses, such as the crime charged here (seeSuzannahPhillips et al., Clearing the Slate: Seeking Effective Remedies for Criminalized Trafficking Victims, City Univ of NY Sch of Law Int'l Women's Human Rights Clinic [2014]; see also Alaina Richert, Note, Failed Interventions: Domestic Violence, Human Trafficking, and the Criminalization of Survival, 120 Mich L Rev 315, 318-319 [2021]).

Footnote 3: Related to this, the People's hearing memorandum states that defendant "made no effort to extricate herself from the relationship despite the available support of several family members." This representation by the People is not only contradicted by the record but also — and more importantly — reflects the antiquated notion that domestic violence victims are easily able to remove themselves from the abusive situations with which they are faced (see People v Brenda WW., 222 AD3d at 1194 n 3; People v Addimando, 197 AD3d at 117; see also People v Wendy B.-S., 229 AD3d at 1320; see generally Deborah Epstein & Lisa A. Goodman, Discounting Women: Doubting Domestic Violence Survivors' Credibility and Dismissing Their Experiences, 167 U Pa L Rev 399, 414 [2019]). As such, this should not serve as a basis for denial of compassionate sentencing pursuant to the DVSJA.