People v Brenda WW. (2025 NY Slip Op 03643)

People v Brenda WW.

2025 NY Slip Op 03643

Decided on June 17, 2025

Court of Appeals

Wilson, Ch. J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 17, 2025

No. 46 

[*1]The People & c., Appellant,
v
Brenda WW., Respondent.

J. Sam Rodgers, for appellant. 
Veronica Reed, for respondent. 
Attorney General, amicus curiae.

WILSON, Chief Judge:
In 2019, the Legislature enacted the Domestic Violence Survivors Justice Act (DVSJA) to give incarcerated domestic violence survivors the opportunity to apply for resentencing to obtain relief from "long, unfair prison sentences" that overestimate their threat to public safety (Assembly Mem in Supp, Bill Jacket, L 2019, ch 31, at 6; see CPL 440.47, Penal Law § 60.12). In 2020, Brenda WW, a domestic violence survivor incarcerated for killing her partner, applied for resentencing under the DVSJA. County Court denied her application. The Appellate Division found that Brenda satisfied the statutory criteria and that the circumstances warranted granting relief. The Appellate Division reduced Brenda's sentences pursuant to the DVSJA and imposed maximum periods of postrelease supervision. The court noted that Brenda had been incarcerated for over 15 years—seven years more than the DVSJA maximum for her convictions—and it stated that the excess time should be credited toward her five-year postrelease supervision term, leaving her with no postrelease supervision to be served.
The People advance two arguments on appeal. First, they contend that in a DVSJA resentencing, the Appellate Division is limited to review the resentencing court's decision for abuse of discretion, but instead reviewed the order de novo. We reject the People's contention. The Appellate Division has plenary review power and as full an ability as the lower court to make its own factual findings. Here, the Appellate Division properly exercised that power in resentencing Brenda as a DVSJA offender.
Second, the People contend that the Appellate Division erred by holding that Brenda's excess time of incarceration should be applied to her term of postrelease supervision, with the effect that upon release she would not be subject to postrelease supervision. That contention has merit: the DVSJA requires resentencing courts to impose a term of postrelease supervision, and Brenda's excess time spent incarcerated cannot be credited toward that term. Because the Appellate Division's imposition of the maximum permissible postrelease supervision may have been affected by its incorrect assumption that her excess time of incarceration could be credited against the postrelease supervision required in DVSJA resentencings, we remit to that court for consideration of an appropriate period of postrelease supervision.
I.
In 2007, Brenda WW killed her partner by stabbing him in the back with a butcher knife. The relationship had been a violent one for nearly a decade. According to Brenda, the victim regularly subjected her to severe physical and emotional abuse.
Brenda was charged with manslaughter in the first degree (Penal Law § 125.20), assault in the first degree (id. § 120.10), and criminal possession of a weapon in the third degree (id. § 265.02). She was convicted after a jury trial and, in August 2008, was sentenced to 25 years' incarceration to life. On appeal, the Third Department reversed her conviction after finding that the trial court abused its discretion in denying her motion for an adjournment to allow for the availability of an expert witness (she intended to present a psychiatric expert to testify on battered person syndrome to support her justification defense). Following a retrial, she was again convicted of all charges, and in January 2010 was sentenced to 20 years' imprisonment and 5 years' postrelease supervision on the manslaughter and assault counts, and an indeterminate term of 3 to 6 years' imprisonment on the criminal possession count, to run concurrently.
In March 2020, Brenda moved for resentencing pursuant to the DVSJA. The Legislature enacted the DVSJA in recognition of the "national epidemic" of domestic violence and the failure of prior law to "allow judges discretion to fully consider the impact of domestic violence" in making sentencing determinations (Assembly Mem in Supp, Bill Jacket, L 2019, ch 31, at 6). The Act expanded judicial discretion at both the initial sentencing stage and through retroactive relief mechanisms. As amended, Penal Law § 60.12 now permits courts to sentence defendants to an alternative, less severe sentence if the defendant was a victim of domestic violence and convicted of certain eligible offenses.
For presently incarcerated persons serving sentences of at least eight years, CPL 440.47 (1) (a) allows them to apply for resentencing pursuant to the framework established in Penal Law § 60.12 (1). That framework bases entitlement to resentencing on a three-prong test:
"(a) at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household as the defendant . . .; (b) such abuse was a significant contributing factor to the defendant's criminal behavior; (c) having regard for the nature and circumstances of the crime and the history, character[,] and condition of the defendant, that a sentence of imprisonment pursuant to section 70.00, 70.02, 70.06, or subdivision two or three of section 70.71 of this title would be unduly harsh[.]" (Penal Law § 60.12).
"[U]pon a determination following a hearing" that an applicant satisfies those criteria, the court "may instead impose" an alternative DVSJA sentence (id.).
County Court denied Brenda's application after a hearing, finding that she failed to meet her burden on any of the three prongs. Although the court acknowledged that "there was domestic violence in the defendant's and [the victim's] relationship, as well as in the defendant's prior relationships and family history," the court concluded that the abuse was neither "substantial" nor a "significant contributing factor" to her offense. The court also concluded that, under the circumstances, Brenda's sentence was not unduly harsh, reasoning that the record reflected "a mutually abusive relationship aggravated by the substance abuse of both parties," that Brenda was not in "imminent danger" from the victim when she committed the offense, and that her offense "was indeed a brutal crime." Brenda appealed (see CPL 440.47 [3]).
The Appellate Division, with two Justices dissenting, effectively reversed County Court's order denying resentencing, granted the application, modified the sentence by reducing Brenda's sentences, and remitted to County Court (222 AD3d 1188). In accordance with Penal Law § 60.12 [8] [a] and [c], the court imposed reduced sentences of eight years' incarceration and five years' postrelease supervision on the manslaughter count, eight years' incarceration and five years' postrelease supervision on the assault count, and two years' incarceration on the criminal possession count (222 AD3d at 1201)[FN1]. On the first prong, the court disagreed with County Court's determination that the abuse Brenda faced was "anything less than 'substantial,'" pointing to the submissions Brenda included as part of her application that showed her "lengthy history of exposure to abusive relationships" in her family and prior relationships, as well as "the physical abuse she suffered at the hands of the victim," which included "being burned with cigarettes, pushed down a set of stairs, having her teeth chipped, neck stomped and nose broken." On the second prong, the court concluded that the record established Brenda's conduct "was significantly attributable" to the abuse, relying on Brenda's trial testimony about the victim's acts immediately before the stabbing. On the final prong, the court determined that Brenda had sufficiently established "that the facts and circumstances of her case warrant[ed] an alternative sentence" (for example, the fact that Brenda appeared "genuinely remorseful" and that many of her prior convictions were "attributable to her longstanding struggle with substance abuse").
Two Justices dissented. The dissent agreed with the majority's analysis on the first two prongs, but disagreed with the majority's determination that, under the circumstances, Brenda's sentence was unduly harsh, citing "the history of mutual violence between the parties, the volume of alcohol defendant consumed the night of the incident, defendant's ever-changing story of the events of that night and her failure to take responsibility and accept that her actions caused the victim's death." One of the dissenting Justices granted the People leave to appeal.
II.
First, the People argue that the Appellate Division erred by failing to defer to County Court's determination denying Brenda DVSJA relief. That contention is meritless. The Appellate Division is empowered to review the record and draw its own factual and legal conclusions in determining that relief was warranted.
The Appellate Division has the same factfinding ability as the trial courts, and its factual review is plenary (Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]; id. ["since the 1925 amendment to the Constitution (art. VI, § 5), the rule has been that the power of the Appellate Division is not so limited, that its authority is as broad as that of the trial court . . . and that as to a bench trial it may render the judgment that it finds warranted by the facts"]; see also NY Const art VI, § 5). The Appellate Division has broad, comprehensive power to "consider and determine any . . . issue of fact involving any error or defect in the criminal court proceedings which may have adversely affected the appellant" (CPL 470.15[1]). This review power enables the Appellate Division to conduct an "independent" assessment of the record and make factual findings that may differ from those made by a lower court (see People v Brown, 25 NY3d 973, 975-976 [2015]; see also People v Harris, 192 AD3d 151, 163 [2d Dept 2020] [noting the Appellate Division's power to make new findings of fact]). The Appellate Division may, under this authority, exercise "independent fact-finding powers" to review a lower court's findings as to whether the evidence is sufficient to satisfy the DVSJA requirements (Brown, 25 NY3d at 976).
The People refer to various statements in DVSJA's legislative history stating that the Act was designed to vest judges with resentencing discretion, and accordingly argue that a court's DVSJA determination must be reviewed by the Appellate Division under an abuse of discretion standard (see e.g. NY Assembly Debate on Assembly Bill A03974, Mar. 4, 2019 [Assembly tr] at 11 ["The application for this . . . gives the judge the discretion to provide this relief"]; id. at 12-13 ["the bill is subject to the discretion of the judge"]; id. at 19 ["It only gives discretion to the judges to . . . resentence; it doesn't mandate it"]). However, nothing in the DVSJA purported to alter the review power of the intermediate appellate courts (whose Justices are also judges), which includes the power to substitute its own discretion regardless of any abuse of discretion by the lower court (see People v [*2]Cruikshank, 105 AD2d 325, 335 [3d Dept 1985], affd People v Dawn Maria C., 67 NY2d 625 [1986]). In any case, as we have long held, the Appellate Division's plenary fact-finding power is rooted in the Constitution and therefore cannot be statutorily abrogated (NY Const art VI, § 5; see York Mortg. Corp., 254 NY at 133 [explaining that the 1925 amendment to the Constitution "reinvested" the Appellate Division with power to "make() a full and complete adjudication on the facts" and "render the judgment which the facts warrant"]).
In sum, the Appellate Division was fully entitled to—as both the majority and dissent in fact did—make its own factual findings and, based on those findings, substitute its discretion for that of County Court and reach a different judgment on each of the three statutory prongs. Because its decision has factual support in the record, we have no basis to overturn it.
III.
Second, the People contend that Appellate Division erred by holding that the time Brenda spent incarcerated under her illegal sentence in excess of the time set by her reduced DVSJA sentence should be credited against her postrelease supervision time, with the effect of eliminating it entirely. We agree.
The DVSJA requires that resentenced defendants be given a period of postrelease supervision. Penal Law § 70.45 (2) (f) (as amended by L 2019, ch 31, § 2) states that that the period of postrelease supervision for resentences imposed under Penal Law § 60.12 (8) "shall be" not less than two and one-half years nor more than five years. That requirement is specific to DVSJA resentences [FN2]. The provision of the Penal Law relied on by the Appellate Division, § 70.45(5)(d), is not applicable. It sets out rules applicable to people who have violated a condition of postrelease supervision by absconding, are declared delinquent, and must serve a "time assessment." It provides that for persons who complete their terms of incarceration during their time assessment, any additional time spent confined under the time assessment is credited toward diminished postrelease supervision time. Brenda has not absconded during postrelease supervision, so that provision is not relevant here.
The Attorney General, in its letter responding to this Court's inquiry, notes that DOCCS's "longstanding" practice is to "credit individuals with excess time spent in prison against a term of post-release supervision." The Attorney General directed us to a different section of the Penal Law, § 70.45(5)(a), which requires that a term of postrelease supervision "shall commence upon a person's release from imprisonment to supervision by DOCCS," interpreting that provision to mean that postrelease supervision should commence "upon the individual's entitlement to release" (emphasis added). However, the word "entitlement" does not appear in § 70.45(5)(a). Instead, the plain language mandates that postrelease supervision commences upon release, not entitlement, and expressly addresses what happens when a sentence is reduced under the Act: a mandatory term of postrelease supervision attaches (see People v Blue, 42 NY3d 584, 596 ["'the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof'"], citing People v Golo, 26 NY3d 358, 361 [2015]).[FN3]
Here, the Appellate Division reduced Brenda's sentences, imposed the maximum time of postrelease supervision, and remitted the matter to County Court for further proceedings (see CPL 470.45). The resentence and imposition of postrelease supervision complies with the DVSJA; the statement that Brenda's time spent incarcerated in excess of the reduced sentence should be credited toward the term of postrelease supervision is error. Because we cannot determine whether the Appellate Division's decision to impose the maximum term of postrelease supervision was based on its erroneous assumption that Brenda would not actually serve any term of postrelease supervision, we [*3]remit to that court to determine the appropriate term of postrelease supervision (see e.g. People v Brisman, — NE3d —2025 NY Slip Op 00123, * 5 [2025]; People v Ba, 39 NY3d 1130, 1132, 1136-37 [2023]; People v Ryder, 222 AD2d 620, 620-21 [2d Dept 1995]).
The dissent agrees that the provision cited by the Appellate Division as authority for freeing Brenda from postrelease supervision is inapplicable (dissenting op at 2). Nonetheless, the dissent contends that we should not resolve the issue for two reasons: first, the issue is not properly presented; second, resolving it is not necessary to the outcome of the appeal (see dissenting op at 2 n 1). Neither reason has merit.
First, the issue is properly before us. The People would have had no reason to raise crediting in County Court because County Court denied Brenda's resentencing motion. Nor would the People have had any reason to raise it on Brenda's appeal, because Brenda did not argue that, should the Appellate Division reverse and reduce (or direct the reduction of) her sentence, her excess time of incarceration, if any, should be credited against any term of postrelease supervision. The first opportunity to raise the crediting issue was when the Appellate Division, sua sponte in its decision, referred to crediting. The People raised, and the parties extensively briefed, that issue on appeal to this Court, which was the People's first opportunity to do so (see e.g. People v Scott, — NE3d &mdash, 2025 NY Slip Op 01562, *3 ["The record here shows no such opportunities for defendant to discover the error and raise it with the court"]; see also CPL 450.90 [1], [2] [a] [giving the People the opportunity to appeal "any adverse or partially adverse" DVSJA ruling to the Court of Appeals, provided "the intermediate appellate court's determination of reversal or modification was on the law alone or upon the law and such facts which, but for the determination of law, would not have led to reversal or modification"])[FN4]. If, as part of its reasoning, a lower court cites an inapplicable statute or reaches an erroneous legal conclusion that may have affected its result, we are not barred from identifying the correct legal authority that, if correctly apprehended by the lower court, may have altered its decision. That is precisely what we recently did in People v Brisman (2025 NY Slip Op 00123) and People v Ba (39 NY3d 1130), where the Appellate Division used (Brisman) or might have used (Ba) an incorrect standard that might have, though did not necessarily, affect the result, and we remitted so to ensure that the Appellate Division's result was not based on a misinterpretation of law. Here, the Appellate Division's decision to impose the maximum term of postrelease supervision may have been based on its mistaken statement that Brenda would, in fact, not serve any of it.
Second, the dissent is also mistaken that resolving this question is not necessary to the outcome of this appeal [FN5]. The question before us is not, as the dissent contends, whether the Appellate Division directed or ordered County Court to direct "that DOCCS calculate defendant's sentence in a particular manner" (dissenting op at 3)[FN6]. [*4]The question is whether the Appellate Division's exercise of its discretion on appeal may have been based on its erroneous legal conclusion that Brenda would not serve a postrelease supervision term [FN7]. Because we answer that question in the affirmative, we remit to give that court the opportunity to impose a postrelease supervision term under the correct legal framework.[FN8]
IV.
In sum, the Appellate Division was within its plenary factual review power when it reversed and reduced Brenda's sentence pursuant to the DVSJA, but because the court's imposition of the maximum term of postrelease supervision may have been based on its erroneous conclusion that time Brenda spent incarcerated beyond that imposed by the DVSJA resentencing could be credited against the term of postrelease supervision required by the DVSJA, the order of the Appellate Division should be modified, without costs, by remitting the case to the Appellate Division for further proceedings in accordance with this opinion and, as so modified, affirmed.

SINGAS, J. (dissenting):

I dissent. I agree fully with the majority's conclusion that the Appellate Division properly exercised its review and resentencing powers under the Domestic Violence Survivors Justice Act (DVSJA). However, I cannot join the majority's holding that those resentenced under the DVSJA may never have their excess time incarcerated credited toward their postrelease supervision (see majority op at 8-14). Resolution of that issue is neither necessary to dispose of this case, nor as clear cut as the majority treats it.

Whether defendant is entitled to such a credit was never an issue before the Appellate Division, nor does that Court appear to have treated it as such.[FN1] Rather, the Appellate Division majority, responding to a concern raised by the dissent that defendant would be released from prison without supervision, noted in a footnote that defendant's excess time incarcerated "should be credited" toward her postrelease supervision despite the dissent's concerns (222 AD3d 1188, 1195 n 4 [3d Dept 2023]; see id. at 1198 n 2 [Pritzker, J., dissenting]). Although, as the majority explains, the provision the Appellate Division cited in the footnote is inapplicable (see majority op at 9), that Court did not engage in any further analysis and did not mention any of the other statutes the majority now holds do not permit such crediting (see majority op at 9-10 & nn 2, 3). The Appellate Division's decretal language imposed "five years of postrelease supervision" with defendant's reduced sentence and remitted to the trial court "for further proceedings pursuant to CPL 470.45."
The majority elides the distinction between a court's duty to impose a period of postrelease supervision under the DVSJA and the execution of that portion of the sentence (see majority op at 10-11 & n 3). Both I and the majority agree that the Appellate Division was required to—and did—impose a period of postrelease supervision. Courts frequently in the normal course impose sentences of imprisonment and postrelease supervision that DOCCS determines to have been previously served in whole or in part. Consistent with that practice, nothing in the decretal language directed (nor ordered County Court to direct) that DOCCS calculate defendant's sentence in a particular manner (see 222 AD3d at 1201). As further evidence that the Appellate Division was not addressing the merits of the crediting issue, that Court has consistently adhered to the view that arguments regarding how DOCCS must calculate a defendant's sentence must be raised in a CPLR article 78 proceeding naming DOCCS as a respondent—not on direct appeal (see e.g. Matter of Olutosin v Annucci, 174 AD3d 1262 [3d Dept 2019]; Matter of Reed v Travis, 19 AD3d 829 [3d Dept 2005]; see also e.g. Matter of Clark v Villegas, 153 AD3d 437, 438 [1st Dept 2017]).
The majority nonetheless holds that individuals resentenced under the DVSJA must serve their entire period of postrelease supervision, regardless of how much excess time they have spent incarcerated (see majority op at 8-10). That conclusion is at odds with DOCCS's longstanding practice of crediting excess time spent in prison toward postrelease supervision (see Matter of Drayton v Schiff, 232 AD3d 1027, 1028 [3d Dept 2024] [noting that DOCCS had credited jail time toward a period of postrelease supervision]; Matter of Cowan v Annucci, 172 AD3d 1203, 1204 [2d Dept 2019] [same]; Matter of Brown v Stanford, 163 AD3d 1337, 1338 [3d Dept 2018] [same]). DOCCS is not a party to this litigation and how it exercised its responsibility to calculate defendant's sentence is not at issue in this appeal. Nevertheless, the Court invited the Attorney General to submit a letter explaining DOCCS's policy [*5]regarding the calculation of postrelease supervision under these circumstances. The Attorney General's expedited submission reaffirms and adopts DOCCS's policy of permitting such crediting. Understandably, given one week to respond, the submission does not engage in a thorough analysis of the statutory provisions examined by the majority (some of which the parties themselves do not even cite).
The majority's holding will have implications for how DOCCS calculates resentences more broadly and neither it nor the Attorney General have been given a significant opportunity to fully examine this issue.[FN2] Though the majority claims to limit its holding to DVSJA cases (see majority op at 8-9, 10 n 3), the linchpin of its analysis—Penal Law § 70.45 (2) (f)'s direction that that the period of postrelease supervision for DVSJA resentences "shall be" 2½ to 5 years—is also present in every other provision providing for a sentence of postrelease supervision (see generally Penal Law § 70.45 [2]). The majority also dismisses the relevance of the legislature's directive that, when a sentence is "vacated and a new sentence is imposed" for the same crime, "the new sentence shall be calculated as if it had commenced at the time the vacated sentence commenced" (Penal Law § 70.30 [5]; see id. [discussing "post-release supervision" as part of a "sentence"]; see also subd [3] [noting that time a "person spent in custody" may not be credited toward a sentence of imprisonment if it has already been "credited against the term or maximum term of any previously imposed sentence or period of post-release supervision" (emphasis added)]; Matter of Bernacet v Ponte, 177 AD3d 410, 410 [1st Dept 2019]).[FN3] According to the majority, that provision only applies when a sentence is "deemed unlawful" (majority op at 10 n 3). But that limitation is wholly absent from the statutory text, which applies whenever, like in the DVSJA context, a sentence is "vacated" and a "new sentence" is imposed (Penal Law § 70.30 [5]; see CPL 440.47 [2] [g] [when granting DVSJA relief the court enters "an order vacating the sentence originally imposed and imposing the new sentence" (emphasis added)]). Because the majority does not identify any plausible legal basis for its asserted limiting principle, its holding will likely impact the calculation of sentences in other resentencing circumstances.
Moreover, the majority's conclusion is at odds with the DVSJA's purpose of permitting resentencing that reflects modern understandings of the psychological effects of intimate partner violence. Indeed, the DVSJA was intended to grant "much deserved relief for incarcerated individuals who pose no threat to public safety," and "address the years of injustice faced by survivors whose lives have been shattered by domestic abuse and decrease the likelihood of survivors being victimized by the very system that should help protect them" (Assembly Mem in Support, Bill Jacket, L 2019, ch 31 at 6, 7). On the other hand, "[i]t is well documented that postrelease supervision is a burden, especially for women who are domestic violence survivors. The strict constraints of postrelease supervision can mimic the abusive relationships that domestic violence survivors experienced in their relationships prior to incarceration" (People v S.M., 72 Misc 3d 809, 816 [Erie County Ct 2021]). Here, after she was resentenced, defendant had been incarcerated approximately seven years in excess of her reduced sentence. The majority's approach treats the extra seven years defendant spent in prison as inconsequential, effectively requiring defendant to remain in DOCCS's custody for up to 12 years after her term of imprisonment ended. This does not appear to further the legislature's broad remedial objectives.
Finally, I note that the relief ordered by the majority—remitting to the Appellate Division so that it may consider imposing a lesser period of postrelease supervision—is "in essence . . . affording affirmative relief to a nonappealing party, and this we are not empowered to do" (People v Carpenito, 80 NY2d 65, 68 & n [1992]; see CPL 470.35). The majority appears to agree that it is powerless to grant relief to defendant on this People's appeal (majority op at 13 n 6). But, again blurring the distinction between the imposition and calculation of a sentence, the majority does just that—vacating the postrelease supervision imposed by the Appellate Division to afford the nonappealing defendant a chance to argue for a sentence under the maximum (majority op at 12-13). The majority attempts to divert from the impropriety of the relief it orders by reframing the question as one no party in the case [*6]has asked this Court to resolve: "whether the Appellate Division's exercise of its discretion on appeal may have been based on its erroneous legal conclusion that [defendant] would not serve a postrelease supervision term" (majority op at 13). Instead, as the majority admits (majority op at 13 n 6), the People have only asked this Court to hold that the crediting referenced by the Appellate Division was impermissible. Having resolved that issue in the People's favor, the majority may not proceed to provide additional relief, remittal, that benefits defendant only. The cases the majority cites as permitting this relief (see majority op at 12) are inapposite because those cases involved remittals (resolving properly presented arguments) to permit the imposition of a lesser sentence in favor of the defendant who was the appealing party (see People v Brisman, — NY3d &mdash, &mdash, 2025 NY Slip Op 00123, *1 [2025]; People v Ba, 39 NY3d 1130, 1130 [2023]).
In sum, rather than upend DOCCS's settled practice, I would wait to decide this important issue when it is properly presented and briefed. I would therefore affirm the Appellate Division order.
Order modified, without costs, case remitted to the Appellate Division, Third Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
Opinion by Chief Judge Wilson. Judges Rivera, Garcia, Cannataro and Halligan concur.
Judge Singas dissents in an opinion, in which Judge Troutman concurs.
Decided June 17, 2025

Footnotes

Footnote 1: In a footnote, the court noted that Brenda had been incarcerated for over 15 years—seven years more than the DVSJA maximum for her convictions—and stated that her "time spent incarcerated in excess of the reduced sentences resulting from our decision should be credited toward her term of postrelease supervision (id. at 219 n 4, citing PL § 70.45 [5] [d]).

Footnote 2: CPL 440.47(4), the provision governing the crediting of excess jail time for DVSJA applicants, is also not in conflict. That provision provides: "In calculating the new term to be served by the applicant pursuant to section 60.12 of the [P]enal [L]aw, such applicant shall be credited for any jail time credited towards the subject conviction as well as any period of incarceration credited toward the sentence originally imposed." That provision specifies that excess time incarcerated should be credited in the calculation of the new prison term. However, it does not permit the crediting of excess incarceration toward the statutorily mandated postrelease supervision (see e.g. Penal Law § 60.12 [2] - [8] [referring to the court's power to fix a new "term of imprisonment" pursuant to the DVSJA]).

Footnote 3: The Attorney General also relies on Lynch v Annucci (151 AD3d 1148 [3d Dept 2017]), which involved a defendant whose sentence was reduced after a federal court partially vacated his conviction in a habeas corpus proceeding. Lynch involves a conviction that was partially declared illegal, so that the excess time incarcerated was unlawful. Here, Brenda spent no time incarcerated unlawfully. The dissent's discussion of Penal Law § 70.30 (5), which addresses resentencing required when a prior sentence is deemed unlawful, is also inapposite (see dissenting op at 4-5). Brenda's original sentence was lawful. Nothing in our decision impacts the sentence calculation for when a conviction is declared unlawful and later reinstated, nor in non-DVSJA circumstances when "a defendant has served more time in prison than is ultimately determined to be lawful and just" (id.). The DVSJA imposes a specific requirement for a mandatory term of postrelease supervision that applies to resentences pursuant to it alone. Thus, although the dissent claims our holding lacks a "limiting principle" (dissenting op at 5), the limiting principle is clear: our holding applies to DVSJA resentences alone, and we express no view on sentence calculation in other resentencing contexts. 

Footnote 4: Contrary to the dissent's claim, our preservation rules do not require parties to anticipate legal errors of an appellate court on an issue no party raised before it or the trial court (see dissenting op at 2 n 1). Our preservation rules exist to "prevent[] a party from 'sit[ting] idly by while error is committed, thereby allowing the error to pass into the record uncured, and yet claim the error on appeal'" (People v Bailey, 32 NY3d 70, 78 [2018], citing People v Patterson, 39 NY2d 288, 295 [1976]).

Footnote 5: Although the dissent claims that our resolution of the crediting issue is unnecessary, it is necessary to the result we reach. It is true but irrelevant that, were we to agree with the dissent, we would not need to resolve the crediting issue.

Footnote 6: The dissent's citations to cases in which the Appellate Division has considered the accuracy of DOCCS's sentencing calculations in CPLR article 78 proceedings are entirely irrelevant (see dissenting op at 3-4). Those cases do not hold that the only way our Court can ever pass on sentencing statutes is via an Article 78 proceeding, and we often interpret sentencing statutes on direct appeal that set out a rule of law that DOCCS must follow, even if it is not a party (see e.g. People v Velez, 19 NY3d 642 [2012]; People v Sparber, 10 NY3d 457 [2008]). Likewise, the cases cited by the dissent that document DOCCS's purported "longstanding practice" of crediting excess jail time are also not relevant, as they do not concern DVSJA resentences (see dissenting op at 3). Finally, as to the dissent's argument that we are providing relief to a nonappealing party, the People appealed and part of the relief they expressly seek is a determination that Brenda must serve some term of postrelease supervision (see Sparber, 10 NY3d at 473, n 7). People v Carpenito (80 NY2d 65 [1992]), the case cited by the dissent, is inapposite. That case concerned a pretrial suppression issue. The defendant was granted leave to appeal to this Court and contended that physical evidence offered against him should have been suppressed; in addition to countering the defendant's argument, the People asked us to reconsider a separate issue (the ordering of a Darden hearing) that both lower courts had decided in the defendant's favor. We held we could not decide that issue, because deciding it in the People's favor would grant relief to the nonappealing party. In contrast, here, the appealing party (the People) is both the party claiming the error and the party that will get relief: requiring Brenda to serve a postrelease supervision term. Characterizing our holding, which will mean that instead of serving no actual postrelease supervision, Brenda must now serve a minimum of 2.5 years of postrelease supervision, as providing relief to the nonappealing party—Brenda—would surely surprise her.

Footnote 7: Contrary to the dissent's assertion, our holding does not conflate (1) a court's duty to impose a term of postrelease supervision with (2) the execution of that term (see dissenting op at 3). We simply observe that the court's legal error regarding (2)—whether the relevant statutes required Brenda to serve a postrelease supervision term—may have influenced its decision on (1), the length of the term imposed. We remit for the court to exercise its duty to impose a new term free from that legal error. Contrary to the dissent's implication, the fact that both a term of incarceration and a term of postrelease supervision are component parts of a sentence does not render them legally indistinguishable. For example, in People v Van Deusen (7 NY3d 744 [2006]), we held that even though the defendant had agreed to a sentence of incarceration of up to 15 years, the imposition of a sentence of 8 years imprisonment plus 5 years postrelease supervision, though in total less than the 15 years, entitled the defendant to void the plea agreement because she had not been informed about the term of postrelease supervision.

Footnote 8: The dissent further contends that our conclusion is at odds with the legislative history and the remedial purpose of the DVSJA (see dissenting op at 5-6). The DVSJA plainly requires that resentenced defendants serve a postrelease supervision term. Because the statutory text is unambiguous, our analysis need not go beyond it (see e.g. People v Corr, 42 NY3d 668, 673 [2024], citing People v Talluto, 39 NY3d at 310, 311 [2022] ["'Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning'"]).

Footnote 1: I reject the majority's permissive preservation analysis (majority op at 11). The "first opportunity" to raise the crediting issue was certainly not after the Appellate Division rendered its decision. The People could have argued before County Court or the Appellate Division that, in the event either resentenced defendant to a lesser term of imprisonment than she had already served, they should not credit defendant's excess term of imprisonment toward her period of postrelease supervision. The parties likely did not make these arguments because it is typically the New York State Department of Corrections and Community Supervision (DOCCS), not the courts, who calculate a sentence in the first instance (see infra at 3).

Footnote 2: Notably, the Attorney General's letter, while explaining DOCCS's policy, does not purport to represent DOCCS in this matter.

Footnote 3: The lack of clarity on this issue in Penal Law § 70.30, which governs the calculation of sentences, may be due to its enactment before the Penal Law provided for the imposition of any period of postrelease supervision. References to postrelease supervision were added as part of the Sentencing Reform Act of 1998 (see L 1998, ch 1, §§ 10-11).