People v Devon Y. (2026 NY Slip Op 01564)

People v Devon Y.

2026 NY Slip Op 01564

Decided on March 19, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 19, 2026

CR-24-1191
[*1]The People of the State of New York, Respondent,
vDevon Y., Appellant.

Calendar Date:December 10, 2025

Before:Aarons, J.P., Reynolds Fitzgerald, Ceresia, Fisher and Corcoran, JJ.

Elizabeth M. Corrado, Public Defender, Kingston (Carly Burkhardt of counsel), for appellant.
Emmanuel C. Nneji, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.

Ceresia, J.
Appeal from an order of the County Court of Ulster County (Bryan Rounds, J.), entered January 11, 2024, which denied defendant's motion for resentencing pursuant to CPL 440.47, after a hearing.
Defendant was approximately one month shy of turning 17 years old when, on May 25, 2009, he, along with several others, committed a violent home invasion robbery in Ulster County. Two days later, defendant participated in a second violent home invasion in Orange County. With respect to the Ulster County incident, defendant, who was armed with a semiautomatic handgun, and his cohorts broke down the front door of an apartment and entered a bedroom where the two victims were sleeping. Defendant and another assailant brandished their firearms and held the couple hostage while the other two assailants ransacked the apartment in search of money and drugs. At a certain point, the three-year-old child of one of the victims, who was nearby, became restless. When the victims attempted to get out of bed to assist the child, they were pistol whipped by two of the intruders. Defendant denied personally striking the victims. As a result of the attack, one victim suffered a broken orbital socket and the other sustained a skull fracture. Defendant, who recalled seeing the victims bleeding, and the others left the apartment with the victims' personal property.
Defendant was subsequently arrested and charged with multiple crimes in both counties. After a jury convicted defendant of three counts of burglary in the first degree, two counts of assault in the first degree and other offenses in Orange County, he elected to plead guilty to burglary in the first degree and robbery in the first degree in satisfaction of the Ulster County charges. Defendant was sentenced in Ulster County to concurrent sentences of 25 years in prison, to be followed by five years of postrelease supervision, with those sentences also being ordered to run concurrently to the prison sentences he had received in Orange County.[FN1]
In May 2023, defendant moved for resentencing upon the Ulster County convictions pursuant to the Domestic Violence Survivors Justice Act (see CPL 440.47; Penal Law § 60.12, as amended by L 2019, ch 31, § 1; L 2019, ch 55, part WW, § 1 [hereinafter DVSJA]). County Court found that defendant met the threshold eligibility requirements set forth in CPL 440.47 (2) and directed a hearing. Following a hearing at which the parties relied upon their motion papers, County Court denied the motion on the basis that defendant had not shown a temporal connection between the abuse he had suffered and his later crimes. Defendant appeals, and we affirm.
"Pursuant to [the DVSJA], defendant was required to establish three factors listed in Penal Law § 60.12 (1): 'that (a) at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household as the defendant . . . ;[*2](b) such abuse was a significant contributing factor to the defendant's criminal behavior; [and] (c) having regard for the nature and circumstances of the crime and the history, character and condition of the defendant,' a standard sentence of imprisonment would be 'unduly harsh' and a reduced sentence warranted" (People v Angela VV., ___ NY3d ___, ___, 2025 NY Slip Op 03644, *1 [2025], quoting Penal Law § 60.12 [1]; see CPL 440.47 [1] [a]; [2] [e]; People v Brenda WW., ___ NY3d ___, ___, 2025 NY Slip Op 03643, *1 [2025]; People v Niquasia MM., 230 AD3d 1473, 1474 [3d Dept 2024]). The first of those factors explicitly involves both the timing as well as the nature and severity of the abuse and, "although nothing in the DVSJA requires a finding that the abuse and the offense occur contemporaneously, the statutory language requiring that the abuse occur 'at the time of the instant offense' would be rendered meaningless unless it created a requirement that a temporal nexus exist between the abuse and the offense" (People v Fisher, 221 AD3d 1195, 1197 [3d Dept 2023], lv denied 41 NY3d 1001 [2024], quoting Penal Law § 60.12 [1] [a]; see People v Boyd P., 232 AD3d 1000, 1002 [3d Dept 2024], lv denied 43 NY3d 1006 [2025]; People v Niquasia MM., 230 AD3d at 1474-1475; People v Liz L., 221 AD3d 1288, 1290 [3d Dept 2023]).
Defendant came forward with proof, including affidavits from himself and his father, a psychiatric evaluation and other documents related to his interactions with mental health professionals in 2005 and 2006, and a 2023 psychiatric evaluation conducted in connection with his application for resentencing, reflecting that he was physically, sexually and/or psychologically abused by family members and a family friend who babysat him during his childhood. A review of this evidence leaves no doubt that defendant endured unspeakable abuse during his childhood, such that County Court's determination that defendant had been "subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household" (Penal Law § 60.12 [1] [a]) is fully supported. However, inasmuch as defendant's proof only accounted for abuse up to the time that he was "13 or 14" years old, and further acknowledging that the subject crimes were committed by defendant just before his 17th birthday, it is inescapable that there was anywhere from a two to four year period of time between the abuse and the criminal conduct at issue herein. Defendant's own evidence, therefore, contradicts any suggestion " 'that the abuse or abusive relationship[s] [were] ongoing' at the time of the" offenses (People v Niquasia MM., 230 AD3d at 1475, quoting People v Williams, 198 AD3d 466, 467 [1st Dept 2021], lv denied 37 NY3d 1165 [2022]; see People v Fisher, 221 AD3d at 1197).
Mindful that even the proponents of the DVSJA contemplated that there would be "a very high standard of proof to demonstrate objective eligibility for relief," and the law was expected [*3]to "affect a relatively small number of offenders" (Rep on Legislation by NY City Bar Assn Commn on Criminal Justice Operations, Domestic Violence and Pro Bono and Legal Services Comms of the NY City Bar Assn, Bill Jacket, L 2019, ch 31 at 15), we note that "[i]t is . . . not enough that defendant was indisputably subjected to substantial physical[, sexual] and psychological abuse in the past" (People v Williams, 198 AD3d at 466; accord People v Croney, ___ AD3d ___, ___, 2026 NY Slip Op 00630, *5 [1st Dept Feb. 10, 2026]). Accordingly, as tragic as defendant's earlier childhood was, we agree with County Court that defendant failed to demonstrate the requisite "temporal nexus . . . between the abuse and the offense[s]" required by Penal Law § 60.12 (1) (a) (People v Fisher, 221 AD3d at 1197; see People v Boyd P., 232 AD3d at 1002; People v Niquasia MM., 230 AD3d at 1475; People v Williams, 198 AD3d at 466-467). Thus, defendant's motion for resentencing was properly denied.
The dissent seeks to create a new temporal nexus standard, whereby the "at the time of the instant offense" language would encompass not only a showing of abuse or an abusive relationship, but also a demonstration of "ongoing harmful effects of substantial abuse." This attempt, however, does not withstand scrutiny, as it has the effect of rendering the first factor superfluous. That is, in the event that a sentencing court were to conclude that the hearing evidence was sufficient to meet the second prong, then prong one would necessarily also be satisfied, as it would be impossible for a defendant to show that past abuse was a significant contributing factor to his or her criminal conduct, as required by the second element, without simultaneously establishing that he or she was suffering from ongoing harmful effects from such abuse, as proposed by the dissent relative to the first element. The dissent overlooks this analysis when making the point that its interpretation would allow for situations where the first prong has been met, but not the second prong (see dissenting op at ___ n 2). While we do not dispute that point, it ignores the problem that, under the dissent's definition, the second prong could never be met without also inevitably satisfying the first prong. Such an outcome clearly was not the intent of the Legislature when it carefully and intentionally drafted the statute to include three separate and independent factors. Had the Legislature wished for the meaning of the second element to subsume the meaning of the first element, it was free to draft the statute accordingly. In sum and by way of comparison, the majority view reflective of the manner in which all four Departments have consistently treated this issue (see People v Croney, ___ AD3d at ___, 2026 NY Slip Op 00630, *5-6; People v Nymeen C., ___ AD3d ___, ___, 2026 NY Slip Op 00144, *4 [2d Dept Jan. 14, 2026]; People v Felix E., 244 AD3d 1815, 1816-1817 [4th Dept 2025]; People v Boyd P., 232 AD3d at 1002[*4]) gives distinct meaning to all three factors, whereas the dissent's view does not.
Fisher and Corcoran, JJ., concur.
Aarons, J.P. (dissenting).
Defendant was physically and sexually abused by his babysitter between the ages of five and nine years old. When defendant was 10 years old, he began smoking marihuana, shoplifting and drinking alcohol, behaviors that originated in his mother's home "due to inadequate supervision." A juvenile delinquency complaint was filed against him in February 2003 charging him with petit larceny, which was closed four months later. Defendant continued to act out in destructive ways at 11 years old, impelling his mother to petition Family Court in December 2004 to find that defendant — by then 12 years old — was ungovernable and a person in need of supervision. The court ordered a 30-day evaluation in a psychiatric hospital, and defendant's mother indicated that his placement should continue beyond that period because "his family does not want him returned home." Treatment records from that time indicate defendant showed signs of posttraumatic stress, sexual concern and sexual distress and experienced chronic nightmares and flashbacks in connection with physical abuse inflicted by the babysitter and his family members — symptoms that, according to the evaluator, defendant had likely underreported. One of the abusers was his mother, who "hit" him when he did "bad things." Toward the end of his hospitalization, defendant had made progress controlling his behaviors and expressed interest in staying outside the home, but by then his mother had changed her mind about defendant remaining in a placement and convinced defendant to do the same, so he went home with her.
Between ages 13 and 14, defendant's behavioral problems evidently grew worse, resulting in charges of unlawful imprisonment, menacing and weapons possession. Defendant was placed in an alternative school outside the home, where he remained for about a year until released back into his mother's custody early per her request. Defendant reportedly became violent with his mother at age 14 — though he insists she lied about this and that she was, in fact, violent with him — and he was "sent away." Defendant recalls he was released from state custody at age 15, after which his mother said she hated him, and, because he was "[s]cared to go home," he began living on the streets. During this period, defendant reports that he used illicit substances to numb himself, contemplated suicide and resorted to stealing out of parked cars, committing "cat burglaries" and scamming drug addicts to fund his own drug addiction. He was arrested again at 16 years old, in January 2009, and placed in secure facilities until early May 2009.
According to defendant, shortly after his release, he attempted to shoot himself but could not get the gun to fire. Instead, he followed a friend and signed onto a plan with two older teenagers and a 25-year-old adult to rob drug dealers for what [*5]he viewed at the time as a "perfect source of income," that is, "[a]s long as no one got hurt." He and his associates executed their plan, which unsurprisingly turned violent and resulted in the instant offense — a home invasion in late May 2009, when defendant was 16 years old, during which two crime victims were pistol-whipped and seriously injured while a three-year-old child was nearby. He was sentenced to 25 years in prison for it — 11 years longer than the 25-year-old's sentence and more than triple the time the two older teenagers received.[FN2]
In preparation for this 2023 resentencing motion under the Domestic Violence Survivors Justice Act (see CPL 440.47; Penal Law § 60.12, as amended by L 2019, ch 31, § 1; L 2019, ch 55, § 1, part WW, § 1 [hereinafter DVSJA]), defendant disclosed his sexual abuse to a forensic psychologist and detailed incidents of physical and psychological abuse by family members. The psychologist concluded that, at the time of the instant offense, defendant was suffering from severe mental illness and posttraumatic stress disorder brought on by multiple years of substantial abuse, which "definitely affected his behavior and his reaction to stress at the time of the instant incidents."
Although County Court found that defendant had been subjected to substantial abuse by family and/or household members, the court nevertheless determined that defendant was not eligible for resentencing under the DVSJA because his last episodes of qualifying abuse occurred four years before his crime. The majority — applying our case law — agrees. We do not. Defendant was still a minor at the time of his crime, maintaining a relationship with his abusive mother and evidently suffering the effects of his history of substantial abuse by family and household members. Defendant's criminal behavior was part of a chain of escalating conduct that is fairly — if not obviously — traceable to being victimized by his abusers throughout his young life. As such, we would conclude that defendant was a victim of domestic violence "at the time of the instant offense" (Penal Law § 60.12 [1] [a]), and therefore we respectfully dissent.
To grant relief under the DVSJA, a court must find by a preponderance of the evidence "that (a) at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household as the defendant as such term is defined in [CPL] 530.11 . . . ; (b) such abuse was a significant contributing factor to the defendant's criminal behavior; [and] (c) having regard for the nature and circumstances of the crime and the history, character and condition of the defendant, that a sentence of imprisonment pursuant to [otherwise applicable sentencing statutes] would be unduly harsh" (Penal Law § 60.12 [1]; see CPL 440.47 [1] [a]; People v Rebecca XX., 230 AD3d 1491, 1492 [3d Dept 2024], lv denied 43 NY3d 946 [2025]). County [*6]Court determined that defendant's application failed at the first prong because there was no "temporal nexus" between the abuse defendant endured and the crime he committed. In doing so, the court relied on this Court's adoption of the First Department's view that, "[a]lthough the DVSJA does not require that the abuse occur simultaneously with the offense . . . , the 'at the time of' language must create some requirement of a temporal nexus between the abuse and the offense or else it is meaningless" (People v Williams, 198 AD3d 466, 466-467 [1st Dept 2021], lv denied 37 NY3d 1165 [2022], quoting Penal Law § 60.12 [1] [a]; see People v Niquasia MM., 230 AD3d 1473, 1474 [3d Dept 2024]; People v Liz L., 221 AD3d 1288, 1290 [3d Dept 2023]). A temporal nexus exists where " 'the abuse or abusive relationship[s] [were] ongoing' at the time of the" instant offense (People v Niquasia MM., 230 AD3d at 1475, quoting People v Williams, 198 AD3d at 467).
Defendant's proof meets that standard. Defendant affirmed that, in 2008, he intended to take his own life by jumping into a lake but decided not to do so because his mother talked him out of it — despite the animosity she had earlier displayed. Then, when defendant was released from the secure facility in May 2009, he returned home despite his mother's earlier rejection of him only to find that she was away receiving treatment for her own drug addiction — which, according to him, "messed [him] up big time," and he lived on the streets "full time" from that point forward. In other words, when he committed the subject crime later in May 2009, he had an ongoing relationship with at least one of the abusers in his family — his mother (see CPL 530.11 [1] [a]).
We further agree with defendant that this Court's interpretation of "at the time of" in Penal Law § 60.12 (1) (a) is too narrow. The statutory scheme reflects the Legislature's choice to commit DVSJA determinations to the discretion of sentencing courts, supported by individualized, evidence-based inquiries (see People v Addimando, 197 AD3d 106, 113-115 [2d Dept 2021]). Against the backdrop of that detailed scheme, it is difficult to conclude that the Legislature contemplated a one-size-fits-all temporal cutoff for which episodes of abuse are relevant under the DVSJA, only to quietly embed that categorical bar to relief inside a prepositional phrase.
Importantly here, the temporal-nexus doctrine emerged in cases involving adult defendants, many of whom attempted to rely upon childhood abuse to seek resentencing for crimes committed as adults (see e.g. People v Croney, ___ AD3d ___, ___, 2026 NY Slip Op 00630, *1 [1st Dept 2026]; People v Boyd P., 232 AD3d 1000, 1002 [3d Dept 2024], lv denied 43 NY3d 1006 [2025]; People v Niquasia MM., 230 AD3d at 1474-1475; People v Fisher, 221 AD3d 1195, 1197 [3d Dept 2023], lv denied 41 NY3d 1001 [2024]; People v B.N., 79 Misc 3d 740, 754 [Sup Ct, Cayuga County 2023], affd on op below sub nom. People v Brenda N., 239 AD3d [*7]1364 [4th Dept 2025], lv denied 44 NY3d 1027 [2025]; see also People v Rivera, 230 AD3d 517, 518 [2d Dept 2024], lv denied 43 NY3d 965 [2025]). By contrast, defendant's abuse and offense occurred before he reached adulthood. In other contexts — for example, the Raise the Age legislation (see CPL art 722, as added by L 2017, ch 59, Part WWW, § 1-a) — the law has "evolved" with science to acknowledge the "fundamental differences between juvenile and adult minds," recognizing that "behavior control continue[s] to mature through late adolescence," and that "young people often possess an underdeveloped sense of responsibility, which can result in impetuous and ill-considered actions and decisions" (People v Rudolph, 21 NY3d 497, 506 [2013, Graffeo, J., concurring] [internal quotation marks and citations omitted]; see Miller v Alabama, 567 US 460, 471-472 [2012]; People v Lloyd F., 245 AD3d 69, 73-74 [2d Dept 2025]). Given this evolution, an adult-calibrated temporal proximity rule yields an untenable result in this case: a defendant who was not a victim of domestic violence when he was 16 years old simply because the years of substantial abuse he endured from his caregivers occurred too early in his childhood.
The statute does not mandate that outcome. The DVSJA is remedial in nature and, as such, we may not limit its application in ways that are not clearly expressed by its text (see People v Brenda WW., ___ NY3d ___, ___ n 8, 2025 NY Slip Op 03643, *6 n 8 [2025]; People v Welch, ___ AD3d ___, ___, 247 NYS3d 892, 893 [4th Dept 2026]). The statutory text does not explicitly impose a "temporal nexus" element, and to the extent such an element may be implied by the "at the time of" language, the text does not define that implied element to only encompass ongoing abuse or abusive relationships. Nor does that definition flow necessarily from the text, as it reads "victim of domestic violence" out of the statute and shifts the "at the time of" language to describe the abuse itself (compare Penal Law § 60.12 [1] [a]).
Mindful that, as a remedial statute, the DVSJA must be construed broadly to give effect to its purpose (see People v Brenda WW., ___ NY3d at ___, 2025 NY Slip Op 03643, *6 n 8; People v Welch, ___ AD3d at ___, 247 NYS3d at 893), we would conclude that the implied temporal-nexus element may be satisfied not only with ongoing abuse or abusive relationships, but also based upon the ongoing harmful effects of substantial abuse (see People v D.L., 72 Misc 3d 257, 263 [Columbia County Ct 2021]). In this case, defendant's history of abuse was not just that; defendant's proof demonstrates that, at the time of the offense, he was experiencing identifiable, direct consequences of his substantial abuse by family and household members. Such an effects-based understanding of the implied temporal-nexus element does not render the "at the time of" language "meaningless" (People v Williams, 198 AD3d at 467), but instead gives effect to the Legislature's intent [*8]to provide "incarcerated domestic violence survivors the opportunity to apply for resentencing to obtain relief from long, unfair prison sentences that overestimate their threat to public safety" (People v Brenda WW., ___ NY3d at ___, 2025 NY Slip Op 03643, *1 [internal quotation marks and citation omitted]; see People v Fisher, 221 AD3d at 1196).
The strength of the relationship between a defendant's victimization and crime is addressed by the statute's second prong, which requires proof that the defendant's substantial abuse was a "significant contributing factor to the defendant's criminal behavior" (Penal Law § 60.12 [1] [b]).[FN3] In conducting that inquiry, a court "should consider the cumulative effect of the abuse together with the events immediately surrounding the crime, paying particular attention to the circumstances under which the defendant was living and adopting a full picture approach in its review" (People v Ava OO., 233 AD3d 1186, 1188 [3d Dept 2024] [internal quotation marks and citations omitted]; see People v Brenda WW., 222 AD3d 1188, 1192-1193 [3d Dept 2023], mod ___ NY3d ___, 2025 NY Slip Op 03643 [2025]). That inquiry necessarily encompasses temporal considerations: it requires a court to examine how the effects of past abuse operated on the defendant to bring about the criminal conduct (see People v D.L., 72 Misc 3d at 264), but it also opens the door to finding that those effects were not significant in light of other, more salient, immediate contributory factors (see People v Scott, 241 AD3d 1368, 1369 [2d Dept 2025], lv denied 44 NY3d 1029 [2025]; People v Riley, 221 AD3d 1162, 1163 [3d Dept 2023], lv denied 40 NY3d 1094 [2024]).
Based upon County Court's determination that defendant demonstrated substantial abuse at the hands of qualifying abusers, along with our view that the temporal-nexus requirement is met, we would conclude that defendant satisfied the first prong of the statutory test for resentencing under the DVSJA (see Penal Law § 60.12 [1]). The court did not reach either the second prong or the third prong, and the record is not sufficiently developed for this Court to make its own findings and conclusions (see generally People v Brenda WW., ___ NY3d at ___, 2025 NY Slip Op 03643, *3). We would therefore reverse County Court's order and remit for further proceedings.
Reynolds Fitzgerald, J., concurs.
ORDERED that the order is affirmed.

Footnotes

Footnote 1: The dissent appears to insinuate some level of unfairness over the fact that defendant received a longer prison sentence than his fellow assailants. However, recognizing that the record does not reveal any information concerning the particular circumstances surrounding the others, we refrain from engaging in any such conjecture, nor will we attribute any ill motives to the sentencing court. That said, what we are able to glean is that defendant personally wielded a handgun in this case and thereafter committed a similar violent home invasion in a neighboring county. In addition, defendant was, at best, inconsistent with any expressions of responsibility and remorse, indeed telling the Ulster County probation department prior to sentencing that he is innocent of all charges. Furthermore, defendant's guilty plea here afforded him the significant benefit of avoiding the prospect of having his prison time run consecutively to the time he was already serving out of Orange County. Finally, the dissent's effort to inject relevance into the sentencing disparity between defendant and the other assailants fails, as it has no bearing on the nature of defendant's criminal behavior or defendant's history, character and condition (see Penal Law § 60.12 [1] [c]).

Footnote 2: The majority constructs a straw man to knock down by proposing that, in describing the disparity in sentencing between defendant and his associates, we "insinuate" that the sentence was unfair (majority op at ___ n 1). We do not "engag[e] in any such conjecture, nor [do we] attribute any ill motives to the sentencing court" (id.). We would simply let County Court determine in the first instance whether defendant should be resentenced given "the nature and circumstances of [his] crime and [his] history, character and condition" (Penal Law § 60.12 [1] [c]).

Footnote 3: Our interpretation of the DVSJA does not make the first prong of the statutory test "superfluous," and nothing about our reasoning allows a sentencing court to skip a step (contra majority op at ___). Finding that the ongoing effects of substantial abuse rendered a defendant a domestic violence victim "at the time of the instant offense" does not compel a court to also conclude that "such abuse was a significant contributing factor" to the offense (Penal Law § 60.12 [1]), thus preserving each prong's independent character (contra majority op at ___). Indeed, the DVSJA requires a defendant to submit evidence to support the first prong before the court will grant a hearing to review the resentencing application (see CPL 440.47 [2] [c]), reinforcing the sequential nature of the three-prong analysis (see Penal Law § 60.12 [1]). Therefore, even assuming — without agreeing — that an effects-based temporal nexus means that "the second prong could never be met without also inevitably satisfying the first prong," it is not clear why the majority considers that a "problem" (majority op at ___).