People v Croney (2026 NY Slip Op 00630)

People v Croney

2026 NY Slip Op 00630

Decided on February 10, 2026

Appellate Division, First Department

KAPNICK, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 10, 2026
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Cynthia S. Kern
David Friedman Barbara R. Kapnick Ellen Gesmer Julio Rodriguez III

Index No. 3212/13|Appeal No. 4908|Case No. 2022-04915|

[*1]The People of the State of New York, Respondent,
vNorman Croney, Defendant-Appellant.

Defendant appeals from the order of the Supreme Court, New York County (Thomas Farber, J.), entered on or about October 27, 2022, which denied defendant's CPL 440.47 motion for resentencing under the Domestic Violence Survivors Justice Act (DVSJA), without a hearing.

Jenay Nurse Guilford, Center for Appellate Litigation, New York (Carola Beeney of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Alexander Michaels and Russell Spivak of counsel), for respondent.

KAPNICK, J. 

On this appeal, we are asked to determine two issues arising from the Domestic Violence Survivors Justice Act (DVSJA). First, we must determine whether defendant Norman Croney can, in the first instance, appeal from the prehearing dismissal of an application for resentencing under the DVSJA. If so, we then must decide whether Supreme Court abused its discretion when it denied defendant a DVSJA resentencing hearing because defendant failed to meet his burden to show that there was a temporal nexus between the abuse he experienced, and/or the related abusive relationship, and the offense he committed. For the following reasons, we conclude that defendant can appeal from a pre-hearing dismissal of his CPL 440.47 resentencing application. However, we find that Supreme Court providently held that defendant failed to meet his evidentiary burden to obtain a resentencing hearing in this case.[FN1]
I.
On May 24, 2013, defendant, then 20 years old, stabbed a stranger in the chest and killed him. The incident occurred while defendant and the victim were arguing outside a sex shop in Manhattan where defendant worked. Defendant ultimately pleaded guilty to manslaughter in the first degree (Penal Law § 125.20) and was sentenced to 18 years' imprisonment, followed by five years of postrelease supervision.[FN2]
On September 16, 2021, defendant filed his initial application to be resentenced under the DVSJA. Defense counsel submitted an affirmation in support of defendant's application in which she averred that defendant's adoptive mother was physically and psychologically abusive throughout defendant's childhood and adolescence. Defendant's initial resentencing application also included medical records from Queens Children's Psychiatric Center covering the period from October 24, 2003 to March 16, 2004, nine years before the underlying offense; paperwork from Brooklyn Children's Center covering the period from May to November 2005, eight years before the offense; and medical records from Central New York Psychiatric Center dating from February 2016 to April 2021, which postdate the offense and generally describe the abuse defendant suffered during his childhood. These records from the time that defendant was incarcerated describe defendant's "stepfather"[FN3] as his "primary support system." They further state that the defendant does not have a known history of sexual abuse. Defendant's initial resentencing application also included an affidavit from his sister, Nyesha Johnson, corroborating his adoptive mother's domestic abuse when they were children. According to defendant's resentencing application, his abuse "did not end until he left the home of . . . his adoptive mother" at 17 years old and became homeless.
On October 12, 2021, while defendant's initial resentencing application was pending, this Court decided People v Williams (198 AD3d 466 [1st Dept 2021], lv denied 37 NY3d 1165 [2022]). There, we held that to qualify for resentencing under the DVSJA, the "abuse or abusive relationship [has to] be ongoing" at the time of the underlying offense (id. at 467). Following our decision in Williams, the People opposed defendant's application for resentencing, arguing that defendant had not sufficiently alleged that "he was the victim of domestic violence at the time of his crime, nor was the abusive relationship between [defendant's adoptive mother] and the defendant 'ongoing'" as the defendant had moved out of his adoptive parents' home three years before the offense.
On January 28, 2022, defendant filed a supplemental resentencing application that included an affirmation from defense counsel and an affidavit from defendant. Defendant avers in that affidavit for the first time that his adoptive father sexually abused him during his childhood. Defendant further states that when he "was around 17 or 18," he went back to visit his brother, and his adoptive father attempted to sexually assault him in a manner consistent with the prior childhood abuse. Defendant resisted, leading to an altercation. After this encounter, defendant felt unwelcome in the home but continued to visit his brother, who still lived there, "in secret." Defendant did not explain why he had not previously disclosed the alleged sexual abuse by his adoptive father.
On September 17, 2022, the People filed a response to defendant's supplemental application for resentencing. The People attached domestic incident reports (DIRs) from July 6, 2004 through July 12, 2012 to show that defendant was often the aggressor, not his adoptive parents. Specifically, the DIRs from July 4, 2010 and July 12, 2012 describe altercations between defendant and his father. The July 2010 DIR describes a dispute during which defendant punched his adoptive father in the face and lacerated his eye. The July 2012 DIR reflects that defendant and his adoptive father "lived together in the past" and argued about defendant getting a job.
On October 27, 2022, Supreme Court, New York County (Farber, J.) denied defendant's motion for resentencing without a hearing, holding that:
"While there is no bright-line rule as to when domestic violence must occur relative to a criminal act, the law requires that a defendant claiming relief under the DVSJA be acting under the present stress of such domestic abuse at the time of the crime. The abuse cannot be so attenuated that it [is] no longer an immediate influence.Without such a qualifier, it would be impossible to evaluate anyone's conduct separate and apart from their past experiences."
The court reasoned that defendant did not present any evidence of a temporal connection between the most recent altercation with his adoptive father and his criminal conduct with an unrelated individual.[FN4] While recognizing the ongoing and nuanced nature of domestic violence cases, the court nonetheless determined that:
"[T]he DVSJA was meant to target a specific type of unjust sentencing—not to provide a mechanism for all victims of childhood trauma to escape responsibility for their actions. Carrying psychological scars from the past and acting under the present influence of ongoing abuse are inherently different. It is only the latter which serves to reduce culpability, and which potentially qualifies for relief under the DVSJA."
II.
In 2019, New York passed the DVSJA. The Act amended Penal Law § 60.12 by authorizing sentencing courts to impose alternative sentences for survivors of domestic violence (see Penal Law § 60.12, as amended by, L 2019, ch 31, § 1; L 2019, ch 55, part WW, § 1). In People v Brenda WW., Chief Judge Wilson, writing for the majority, explained that the Legislature enacted the statute to correct the longstanding problem of survivors of domestic violence receiving disproportionately severe sentences that failed to account for the impact of sustained abuse (— NY3d &mdash, 2025 NY Slip Op 03643, *1 [2025]). The Court noted that the Legislature enacted the statute "to give incarcerated domestic violence survivors the opportunity to apply for resentencing to obtain relief from 'long, unfair prison sentences' that overestimate their threat to public safety" (Brenda WW., 2025 NY Slip Op 03643, *1, citing Assembly Mem in Support, Bill Jacket, L 2019, ch 31 at 6).
The legislation was specifically meant to "address shortcomings" in the existing resentencing law known as "Jenna's Law" (L 1998, ch 1) (Assembly Mem in Support, Bill Jacket, L 2019, ch 31). Jenna's Law mandated tougher, determinate sentences for violent felony offenders, but it included an exception that allowed judges to impose less punitive indeterminate sentences for domestic violence survivors convicted of certain homicide or assault crimes against their abusers. The legislature lamented that this exception "unfortunately" did not "lead to less punitive sentencing for survivors" (id.).The DVSJA was therefore enacted to provide judges with more discretion to impose "less harsh, determinate sentences" in a broader set of circumstances (id.). Unlike Jenna's Law, the DVSJA applies to both male and female survivors of domestic violence, situations where the offense was not committed directly against the applicant's abuser, and a broader category of offenses than homicide and assault (compare Penal Law § 60.12, with L 1998, c.l § 1; see also Williams, 198 AD3d at 466 ["DVSJA does not require that . . . the abuser be the target of the offense").
Although the DVSJA covers a broader set of circumstances than its predecessor legislation, the legislative history shows that these changes were nevertheless circumscribed to situations where an incarcerated survivor was attempting to "protect themselves from further violence" or committed the crime "as a result of an abuser's coercion" (Rep on Legislation By the Criminal Justice Operations, Domestic Violence and Pro Bono and Legal Services Comms of the NY City Bar Assn, Bill Jacket, L 2019, ch 31 at 2). The sponsors of the legislation stated that the law was meant to "reform[] the unjust ways in which the criminal justice system responds to and punishes domestic violence survivors who act to protect themselves from an abuser's violence" (Assembly Mem in Support, Bill Jacket, L 2019, ch 31).
To ensure that the statute is applied as intended, trial judges have more discretion to "tak[e] into consideration the effect of the offender's own victimization in determining a just punishment" where "the offender is able to meet the strict three-part standard of eligibility" (Assembly Mem in Support, Bill Jacket, L 2019, ch 31). However, a judge can grant an alternative sentence to a defendant only if they find that:
"(a) at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household as the defendant as such term is defined in [CPL 530.11(1)] . . . ; (b) such abuse was a significant contributing factor to the defendant's criminal behavior; (c) having regard for the nature and circumstances of the crime and the history, character and condition of the defendant, that a sentence of imprisonment pursuant to section 70.00, 70.02, 70.06 or subdivision two or three of section 70.71 of this Title would be unduly harsh." (Penal Law § 60.12[1]).
The DVSJA also added CPL 440.47, which authorizes retroactive sentencing for individuals, like defendant, who meet the requisite criteria of Penal Law § 60.12 but whose crimes occurred before August 12, 2019, the effective date of the resentencing portion of the DVSJA (see CPL 440.47[1][a]; see also William C. Donnino, Prac Commentary, McKinney's Cons Laws of NY, 2022 Electronic Update, Penal Law § 60.12). An applicant must first make a "request" to apply for resentencing upon a showing that the defendant is confined in a department of corrections facility and serving a sentence of over eight years for an offense "eligible for an alternative sentence pursuant to section 60.12 of the penal law" (CPL 440.47[1]).
If the court grants permission to apply for resentencing under the DVSJA, as was the case here, the applicant may then submit an application for resentencing, which "must include at least two pieces of evidence corroborating the applicant's claim that he or she was, at the time of the offense, a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household as the applicant as such term is defined" in CPL 530.11(1) (CPL 440.47[2][c]). At least one piece of evidence must be a "court record, pre-sentence report, social services record, hospital record, sworn statement from a witness to the domestic violence, law enforcement record, domestic incident report, or order of protection" (id.). The second piece of evidence may derive from elsewhere (id.).
If a court finds the application insufficient or lacking in any way, it "shall dismiss the application without prejudice" (CPL 440.47[2][d]). Where the application meets those requirements, however, the court "shall conduct a hearing" to determine controverted facts and decide whether it should resentence the applicant based on the criteria discussed above in Penal Law § 60.12 (CPL 440.47[2][e]). Following the hearing, a court may grant resentencing only where a defendant has met Penal Law § 60.12(1)(a)'s criteria.
"An appeal may [then] be taken as of right" "(a) from an order denying resentencing; or (b) from a new sentence imposed under this provision" that is "based on the grounds that (i) the term of the new sentence is harsh or excessive; or (ii) that the term of the new sentence is unauthorized as a matter of law" (CPL 440.47[3]). An applicant can also appeal as of right from an order "specifying and informing such applicant of the term of the determinate sentence the court would impose upon resentencing on the ground that the term of the proposed sentence is harsh or excessive" (id).
III.
The People argue initially that defendant lacks a right to appeal from Supreme Court's prehearing dismissal of his resentencing application under CPL 440.47(3). The People maintain that although the DVSJA provides an appeal as of right "(a) from an order denying resentencing" after a hearing (although these three words are not in the statute) or "(b) from a new sentence imposed under this provision" (CPL 440.47[3]), there is no language in the DVSJA providing a right to appeal from an order dismissing an application without a hearing (id.). We do not agree with this interpretation of the statute.
CPL 440.47 authorizes courts to deny motions for resentencing for several reasons, including: the defendant is not at the time confined to a prison or is not serving at least an eight-year sentence (CPL 440.47[1][a], [d]); the application lacks sufficient corroboration (CPL 440.47[2][a]-[d]); or because the court finds, after a hearing, that the defendant was not entitled to resentencing under the statutory criteria (CPL 440.47[2][e]-[f]). After setting forth the criteria for judges to consider in granting or denying resentencing applications under CPL 440.47(1) and (2), CPL 440.47(3) provides a catch-all provision that states: "[a]n appeal may be taken as of right in accordance with applicable provisions of this chapter: (a) from an order denying resentencing; or (b) from a new sentence imposed under this provision . . . ." Nothing in CPL 440.47(3)'s statutory text limits a defendant's right to appeal from "an order denying resentencing" whether made without a hearing or after a hearing.
The People's position relies extensively on a decision by the Appellate Division, Third Department in People v Melissa OO. (234 AD3d 101 [3d Dept 2024]). There, the Third Department dismissed an appeal from a prehearing order denying a DVSJA resentencing application. The Third Department reasoned that "in enacting the DVSJA, the Legislature expressly authorized appeals as of right to an intermediate appellate court from orders denying resentencing or granting resentencing and imposing a new sentence," but provided no such express statutory right to appeal "from an order dismissing an application for resentencing prior to a hearing" (id. at 105; see also People v James QQ., 232 AD3d 1137, 1138 [3d Dept 2024], lv denied 43 NY3d 964[2025] [holding that "where, as here, a defendant's application for resentencing pursuant to the DVSJA is dismissed without prejudice due to a failure to satisfy the evidentiary requirements under step two (see CPL 440.47 [2][c]), such an order of dismissal is not appealable"]. However, as discussed above, CPL 440.47(3) specifically provides that an appeal may be taken as of right from "an order denying resentencing;" there is no language limiting that appellate right only to orders issued after a hearing is held.
Indeed, the First and Second Departments have repeatedly reviewed orders denying a DVSJA resentencing application without a hearing due to a defendant's failure to satisfy CPL 440.47(2)'s evidentiary requirements (see e.g. People v Hernandez, 236 AD3d 530 [1st Dept 2025]; People v Nymeen C., _ AD3d _, 2026 NY Slip Op 00144 [2d Dept 2026]; People v Martinez, 234 AD3d 874 [2d Dept 2025], lv denied 43 NY3d 964 [2025]; People v White, 226 AD3d 1054 [2d Dept 2024], lv denied 42 NY3d 931 [2024]). The consistent treatment of these cases as appealable by both our Court and the Second Department supports our interpretation of the statute.
IV.
Defendant next argues that Supreme Court erred in denying him a DVSJA hearing because his resentencing application alleged sufficient facts to corroborate that he was in an ongoing abusive relationship with his adoptive parents at the time of the offense. As previously described, the DVSJA allows for resentencing relief only if a court finds that "[a]t the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual, or psychological abuse" (Penal Law § 60.12[1][a]). In People v Williams, the defendant sought resentencing under the DVSJA based on a history of past abuse. The application was denied after a resentencing hearing. This Court affirmed, reasoning that, "[a]lthough the DVSJA does not require that the abuse occur simultaneously with the offense or that the abuser be the target of the offense, . . . the abuse or abusive relationship [has to] be ongoing" (198 AD3d at 466-467). The "'at the time of' language [in the statute] must create some requirement of a temporal nexus between the abuse and the offense or else it is meaningless" (id. at 467). It was not enough "that defendant was indisputably subjected to substantial physical and psychological abuse in the past" (id. at 466).
Several courts have applied Williams and denied motions for resentencing without a hearing where, as here, a defendant fails to corroborate that he or she was the victim of domestic abuse or in an abusive relationship "at the time of the crime" (see People v Hernandez, 236 AD3d at 531 [holding that "defendant failed to submit any reliable evidence to support 'a temporal nexus between the abuse and the offense'"]; People v Naqvi, 236 AD3d 927, 928 [2d Dept 2025], lv denied 43 NY3d 1010 [2025] [holding that "the evidence failed to corroborate the defendant's allegations that, at the time of the offenses, he was a victim of domestic violence subjected to substantial psychological abuse"]; People v Martinez, 234 AD3d at 875-876 ["[A]s the defendant failed to meet his burden under CPL 440.47(2)(c), the court properly denied the defendant's motion without a hearing"]; People v White, 226 AD3d at 1055 [holding that the "evidence failed to corroborate the defendant's allegations that, at the time of the offense, he was a victim of domestic violence subjected to sexual abuse"]; People v James NN., 224 AD3d 1014, 1016 [3d Dept 2024], lv denied 42 NY3d 927 [2024] [the evidence submitted "does not suggest that the incident leading to the [victim's] death was related to any ongoing abuse of which defendant was the victim"].
Applying the foregoing standards to this case, Supreme Court providently denied defendant's application for resentencing because he failed to submit evidence sufficient to establish a temporal nexus between either the abuse he suffered or the related abusive relationship and the underlying offense. Defendant's initial application included various prison records and medical records, as well as an affidavit from his sister. These documents speak to the unquestionably horrible abuse that defendant's adoptive mother (not his father) perpetrated during his childhood. However, they do not corroborate any claim of abuse "at the time of the offense." In fact, defendant's initial resentencing application makes clear that the childhood abuse he suffered ended when he "left [his adoptive mother's] home for good" and "became homeless" when he was 17 years old. Defense counsel likewise affirmed that defendant's abuse "did not end until he left the home of . . . his adoptive mother."
The evidence that defendant submitted in his supplemental application after People v Williams was decided fares no better. In that application, defendant averred, for the first time, that his adoptive father attempted to sexually abuse him two or three years before the offense he committed in 2013. Defendant then relies on two DIRs submitted by the People describing altercations between the defendant and his father at least ten months before the offense.[FN5] However, such a lengthy temporal gap between the incidents reported in the DIRs and defendant's underlying offense fails to support the temporal nexus required by People v Williams (see People v Niquasia MM., 230 AD3d 1473, 1475 [3d Dept 2024] [gap of 11 months between police report describing domestic incident and the underlying crime found to be insufficient to establish a temporal nexus]). The DIRs additionally fail to corroborate defendant's affidavit about his adoptive father's sexual abuse. Defendant therefore did not meet his evidentiary burden to show that he was in an ongoing abusive relationship with his adoptive father at the time of the underlying offense, or that the abuse was a significant contributing factor to his offense.
We recognize that the dynamics of sexual abuse are nuanced and complex. Nonetheless, the DVSJA's legislative history confirms that the statute was intended for a narrow set of circumstances involving a more direct connection between a defendant's abuse and the underlying crime, which are not present here (see People v Badji, 36 NY3d 393, 399 [2021] ["the legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear"] [citation and internal quotation marks omitted]). As discussed above, the law was primarily intended to apply in circumstances where domestic violence survivors committed a crime to protect themselves from their abuser, or because they were coerced by their abuser (see NY City Bar Assn Report, Bill Jacket, L 2019, ch 31 at 6). Indeed, proponents of the law contemplated that "the DVSJA would affect a relatively small number of offenders" because of the "very high standard of proof" required "to demonstrate objective eligibility for relief" (id.). The statute, therefore, affords judges significant discretion to determine whether resentencing is appropriate under the DVSJA's strict eligibility criteria (see Assembly Mem in Support, Bill Jacket, L 2019, ch 31).
The motion court therefore providently exercised its discretion and denied defendant's application for resentencing. Cognizant of the horrific abuse that defendant suffered throughout his life, we nonetheless note that defendant had by his own admission left his adoptive parents' home almost three years before the underlying crime. Defendant's altercation with his adoptive father 10 months before the offense also fails to show that he was acting to protect himself from, or in response to, his adoptive parents' abuse or that he was being coerced by them at the time of the underlying offense. To require a resentencing hearing on these facts would dramatically expand the universe of individuals for whom DVSJA resentencing would be possible, in contravention of the legislative intent.
Accordingly, the order of the Supreme Court, New York County (Thomas Farber, J.), entered on or about October 27, 2022, which denied defendant's CPL 440.47 motion for resentencing under the DVSJA, without a hearing, should be affirmed.
Order, Supreme Court, New York County (Thomas Farber, J.), entered on or about October 27, 2022, affirmed.
Opinion by Kapnick, J. All concur.
Kern, J.P., Friedman, Kapnick, Gesmer, Rodriguez, JJ.
THIS CONSTITUTES THE DECISON AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 10, 2026

Footnotes

Footnote 1:The facts summarized in this opinion are drawn from defendant's allegations, as set forth in his motion for resentencing and supporting documentation filed in support of his application.

Footnote 2: On direct appeal, this Court affirmed defendant's conviction, "finding the sentence not excessive" (People v Croney, 166 AD3d 409 [1st Dept 2018], lv denied 32 NY3d 1203 [2019]).

Footnote 3: We assume the reference to defendant's "stepfather" in the record refers to defendant's adoptive father, since there was no other indication of a stepfather.

Footnote 4: Supreme Court's conclusion appears to rest, in part, on its reference to a two-year gap between abuse perpetrated by defendant's adoptive father and the underlying offense. However, the appellate record reflects that the gap was approximately 10 months, as evidenced by the DIR from July 2012.

Footnote 5: On appeal, defendant argues that he did not have an opportunity to attest to whether the interactions cited in the DIRs involved physical, psychological, or sexual abuse because the People filed the DIRs on surreply. However, we find that the DIRs contain sufficient information to support dismissing defendant's resentencing application without a hearing. Moreover, defendant does not explain why he did not address the events described in the DIRs in his moving papers.